| 99 | 249 |
| 160 | 500 |
| 99 | 249 |
| 85a | 464 |

THE UNION MUTUAL LIFE INSURANCE COMPANY

*v.*

TALMADGE E. SPAIDS *et al.*

*Filed at Ottawa May 14, 1881.*

1. FRAUDULENT CONVEYANCE—*who may avoid.* Where a party, at the time of making a voluntary settlement upon his children, or making provision therefor, was not insolvent, and all the debts he then owed have since been paid, in the absence of proof of collusion and fraud to deceive subsequent creditors, the same will not be fraudulent, and can not be avoided by such subsequent creditors.

2. TRUST—*power in trustee to mortgage for money borrowed, construed.* A deed conveying real estate to one in trust for his two daughters, authorized the trustee to borrow money with which to pay the principal due on money secured by trust deed already given on the property, and to secure the payment of the money thus to be borrowed, with interest, by trust deed or mortgage on the premises: *Held*, that the power to borrow money was given only to

remove prior incumbrances, and thus protect the property, and could not be exercised after the discharge of such pre-existing incumbrance.

3. SAME—*trustee applying trust property to his own use—purchaser.* It is well settled that where a trustee sells trust property to pay his own debt, under a general power to sell for the benefit of his *cestui que trust,* and the purchaser at the time has notice that this is his object, he will take but a voidable title.

4. Where the lender of money to a trustee has ample notice, through an agent, that the borrower holds the estate he mortgages, in trust for the benefit of another, and loans money to such trustee knowing he is going to use it for his own private benefit, and takes a mortgage from him on the trust property, it matters not how ample the power of the trustee may be, the mortgage can not be enforced, but will be set aside as a cloud on the title of the *cestui que trust.*

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

The Union Mutual Life Insurance Company exhibited its bill, on the equity side of the Superior Court of Cook county, against Talmadge E. Spaids, Susie E. Spaids, Kate Louise Spaids, Kate H. Spaids, Levi D. Boone and James D. Smith, alleging that on the 27th of May, 1871, Susan M. Harris, being the grandmother of Susie E. and Kate Louise Spaids, made her deed of trust to Henry Hopson, of Utica, New York, and Talmadge E. Spaids, of Chicago, second trustee, whereby said Susan M. Harris granted, etc., to Talmadge E. Spaids, during his life, and after his death to Hopson, lot two, in block three, in William Jones' addition to Chicago, to hold in trust for said minor children; but it was provided in said trust deed that Talmadge E. Spaids should have full power and ample authority to do any and all things with the said property which he might do if the property were vested in him absolutely, and not charged with any trust; that on the 23d of February, 1876, Talmadge E. Spaids, by virtue of such power, applied to the complainant for a loan of $10,000, to be invested in said estate, and for the purpose of preserving the same; that complainant advanced the said sum to the said Spaids as trustee, and to secure the repayment of said loan Spaids executed to the complainant his promissory note

for the amount loaned, and interest notes for the interest, and secured the same by a deed of trust upon the premises, making Levi D. Boone trustee, and providing that in default of payment said premises should be sold in the usual manner, upon notice, the proceeds to be applied to the liquidation of the notes, etc.

Other averments follow, charging maturity of notes, etc. Prayer for foreclosure and sale.

Defendants Kate Louise Spaids and Susie E. Spaids, by their guardian, answer, admitting the execution by Susan M. Harris, who was their grandmother, of the deed of trust, as alleged in the bill of complaint, but they deny that power was thereby given to Talmadge E. Spaids to use the premises for his own use and benefit, or to sell, mortgage or convey the same for his own individual benefit. They deny that Spaids borrowed any money of the complainant, as trustee, but allege that he applied to complainant and requested it to loan him, individually, and not as trustee, $10,000, and offered to secure the same by his individual note, and trust deed upon said premises,—which offer was accepted by the complainant, and the money was so loaned and secured; and they deny that any part of this sum was invested in their said property for the purpose of preserving the same, or was ever intended so to be, but allege the same was all used by said Talmadge E. Spaids in his own individual business; and they insist the trust deed by Spaids to complainant was executed without any authority of law. They also, at the same time, filed their cross-bill, alleging therein, in substance, the same facts set up in their answer, expressly denying the authority of Talmadge E. Spaids to execute the mortgage, and praying that the cloud of said mortgage be removed from their title to the said premises.

Answer was filed to the cross-bill, putting in issue the material allegations.

Subsequently, by leave of court, complainant amended the bill of complaint, by alleging that the land in controversy

was the property of T. E. Spaids, and held in the name of Susan M. Harris to cheat, etc., the creditors of Spaids, who, it is alleged, was then largely in debt.

The case was heard upon bill, answer, cross-bill and answer, and proofs, and the court thereupon decreed that the original bill be dismissed, and that the prayer of the cross-bill be sustained.

The deed of trust from Susan M. Harris to Hopson and Spaids bears date July 27, 1871; professes to be executed by and between Susan M. Harris, of the city of Chicago, in the county of Cook, and State of Illinois, of the first part, and Henry Hopson, of the city of Utica, in the State of New York, of the second part, and Talmadge E. Spaids, of the city of Chicago, and proceeds as follows:

"Whereas, the said party of the first part is the grandmother of Susie E. Spaids and Kate Louise Spaids, the children of Talmadge E. Spaids and Kate Harris Spaids, and is desirous in her lifetime to make some provision for the support, maintenance and education of the said Susie E. and Kate Louise during their childhood, and to secure to them in the future (and in case of their marriage) some property for their sole and separate use: now, therefore, this indenture witnesseth, that the said party of the first part, in consideration of the premises and one dollar to her in hand paid by the said parties of the second part and third part, has granted, bargained and sold, aliened, conveyed and confirmed, and by these presents doth grant, bargain and sell, alien, convey and confirm, with the said party of the third part, for and during his natural life, and after his death, if the said party of the second part shall survive the said party of the third part, to the said party of the second part, for and during his natural life, all that lot of land situate, lying and being in the city of Chicago, in the county of Cook, and State of Illinois, known and described as lot number two in block number three, in William Jones' addition to Chicago, to have and to hold the same, with all and singular the privi-

leges and hereditaments thereunto belonging, unto the party of the third part, for and during his natural life, and after the death of said party of the third part, to the said party of the second part, for and during his natural life, in trust, nevertheless, to hold the title thereto, to lease the same, to receive and collect the rents, issues and profits and income thereof, to and for the joint use of the said Susie E. and Kate Louise, paying therefrom all taxes, assessments, costs and expenses of repairs and insurance thereon, interest on moneys secured by trust deed or deeds or mortgages of and upon said premises, as well as the principal moneys so secured thereon, so far as such rents, issues and profits shall be sufficient therefor; or the said party of the third part, for and during his lifetime, may at his option pay out and use all of the said rents, issues and profits to and for the maintenance, support and education of the said Susie E. and Kate Louise, or such parts thereof as may remain after paying the taxes and assessments, costs and expenses of repairs, and insurance, and interest on said moneys so accrued; and when the said principal moneys shall become due and payable he may, if he can, continue the loan or loans upon the same security, or he may secure the same by trust deed or mortgage, or other instruments, of or upon said premises, for such further time as to him shall seem meet, or he may borrow the money with which to pay said principal moneys, and secure the payment thereof, with interest thereon, by the trust deed or mortgage on said premises, or in such other manner as to him shall seem meet.   And the said party of the third part, having full power and ample authority to do any and all things with the said property, and in or about and concerning the premises, in his own discretion, which he would or could do were the title to the property vested in him absolutely, not charged with any trust, he, the said party of the third part, may at any time, in his discretion, sell and dispose of the said property for such price and upon such terms as to him shall seem meet for the interest of the said Susie E. and Kate Louise,

but he shall hold the said proceeds, and all property in which they or any part thereof shall or may be invested, upon the same trust and for the same purposes in, for and upon which said premises are hereby conveyed to him; and he may, from time to time, sell and dispose of any such property, and the proceeds again invest from time to time, at all times holding all such property and proceeds and accumulations thereof in trust, for the same uses and upon the same trusts hereinbefore declared, during his natural life, as aforesaid; and after his death the said party of the second part shall take and hold the said property, and any or all other property then held by the said party of the third part, which has come from the said premises or the income or proceeds of any sale or disposition thereof, and all accumulations thereof, upon the same trust and with the same powers over and concerning them hereinbefore or hereafter declared, or in favor of or against the said party of the third part, or given or confessed to and on him; and the said party of the third part may, at any time during his life, if he shall think fit so to do, pay over any and all moneys to the said Susie E. and Kate Louise, an equal amount to each, which shall come into his hands in any way from said premises hereby conveyed, either from the rents, issues and profits, or from the proceeds of the sale thereof, or from any property in which he shall have invested any of such rents, issues, profits or proceeds, from time to time, or he may transfer to them any securities he may have or hold, or convey to them any property which he may have or hold in trust for them, so that each shall have an equal amount thereof, or interest or estate therein.

"And the said party of the second part, if he shall survive the said party of the third part, may do the same, and in either, receipt of the said Susie E. and Kate Louise shall be sufficient to release and discharge the party executing the said trusts from the further discharge thereof, or liability on account of said trust. And after the death of both of said parties of the second and third parts, the said premises, if

they shall remain unsold and undisposed of, and all moneys arising therefrom then unexpended and remaining, and all property acquired by either of the said parties by and derived from the proceeds of the same, either rents and profits, or proceeds of sale, or otherwise, shall at once belong to, rest in and be held by the said Susie E. and Kate Louise, their heirs and assigns, absolutely, (and in case they or either of them should marry, the said property shall belong to and shall be held by them or her, as her sole and separate property and estate, and shall not be subject to the control of any husband either of them may have, nor liable for his debts.) And the said party of the first part hereby expressly waives and releases all right, title and interest whatever in and to the above described, and each and every part thereof, which is given by any or all laws of the State of Illinois pertaining to the exemption of homesteads for sale on execution."

Levi D. Boone was the general agent of the Union Mutual Life Insurance Company, under a written power, which was recorded, for the Northwestern States, for a period of twelve years, covering the time of all the transactions referred to in this controversy.

The following was executed by Mrs. Harris, Spaids and Boone:

" This indenture, made and entered into this 20th day of October, 1871, between the Union Mutual Life Insurance Company of Maine, and Levi D. Boone, of the first part, Susan M. Harris, of the second part, and Talmadge E. Spaids and Henry Hopson, of the third part:

"Whereas, the said Susan M. Harris heretofore, to-wit, on or about the 11th day of July, 1868, borrowed of the Mutual Life Insurance Company of Maine, the sum of $20,000, through said Levi D. Boone, agent of said company, and to secure the payment of the same made her certain notes and personal obligation, and also made and executed a certain deed, commonly called a trust deed, to the said Levi D. Boone, as trustee therein named, whereby she conveyed to

said Levi D. Boone those certain lots of land in the city of Chicago, county of Cook, and State of Illinois, known as lots two and three, William Jones' addition to Chicago, which said trust deed was dated on or about said 11th day of July, 1868, and was recorded in the office of the recorder of deeds for Cook county, in Book 460 of Deeds, as it is believed;

"And whereas, the said Susan M. Harris heretofore conveyed the said lot two to the party of the third part, in trust for Susie E. Spaids and Kate Louise Spaids, infant daughters of the said Talmadge E. Spaids, upon the trust therein declared;

",And whereas, it was the intention of the said party of the first part and second part that the sum of $10,000, or one-half of the said sum of $20,000, should in fact be a lien and incumbrance upon each of said lots;

"And whereas, after the conveyance of said lot two to the said Talmadge E. Spaids and Henry Hopson, an agreement or declaration was made, executed and acknowledged by the parties hereto, in due form of law, and was afterwards recorded in the said recorder's office, some time in the month of August last past, which agreement was, however, destroyed in the great fire which occurred in the said city of Chicago on the 8th and 9th days of October instant, together with the record thereof, in and by which agreement it was, among other things, declared that it was the intention of the said first and second parties, that each of said lots was to be subjected to a lien or incumbrance of one-half of said $20,000, to-wit, $10,000; that on the payment of one-half of said $20,000, or $10,000, and interest thereon, the said party of the first part did agree to the release of said lot two from the lien and incumbrance of such trust deed, and the said Susan M. Harris did agree to and with the said third parties, that she would pay and discharge said sum of $20,000 and interest, from the proceeds of the sale of said lot three, and the appurtenances, so as to release the said lot two from

the incumbrance of said trust deed, and secure the same unincumbered for the use of the said Susie E. and Kate Louise, according to the trust declared in the deed of conveyance of the said lot by the said party of the second part to the said party of the third part;

"Now, therefore, this indenture witnesseth, that the parties hereto, in consideration of the premises, have and do hereby declare and make known that such an agreement was duly executed and acknowledged by them, and that the same was duly recorded in the office of the recorder of deeds in Cook county; that its conditions and agreements were substantially as hereinbefore recited; that the same has been destroyed by the said fire; that this indenture shall at all times and in all places be taken and received as conclusive evidence of the matters hereinbefore recited and declared, and of the terms, conditions and covenants contained in the said agreement. And that the said parties hereto, their heirs, assigns and successors, are bound by the said agreement, and shall and will faithfully and promptly keep and perform all and singular the covenants and agreements therein contained, to be by them kept and performed, the same as are herein recited and declared, fully and to all intents and purposes.

"In witness whereof, the said Union Mutual Life Insurance Company of Maine has caused these presents to be signed and sealed by the said Levi D. Boone, its duly authorized appointed agent and attorney in fact, and the other parties hereto have set their hands and seals hereto, the day and year last aforesaid."

The case comes here by the appeal of the complainant.

The other evidence, material to a comprehension of the questions involved, is sufficiently recited in the opinion.

The errors assigned bring before this court the question of the sufficiency of the evidence to sustain the decree.

Messrs. SWETT, BATES & HASKELL, for the appellant:

The power to sell and dispose of, includes the lesser power to mortgage, and the rents and profits not only include the annual income from the property, but also the profits of sale or mortgage. See *Mills* v. *Banks,* 3 Peere Wms. 8; *Woods* v. *Woods,* 1 Mylne & Craig, 401; *Ball* v. *Harris,* 4 id. 264; *Haldenby* v. *Spofford,* 1 Beav. 390; *Holme* v. *Williams,* 8 Sim. Ch. 556; *Earl of Oxford* v. *Earl of Albemarle,* 12 Jur. pt. 1, p. 811; Coote on Mortgages, 157; Sugden on Powers, 552; Lewin on Trusts, 377; Farwell on Powers, 456; Hill on Trustees, 335, n. 1; Perry on Trusts, (2d ed.) secs. 768, 581; *Lancaster* v. *Delan,* 1 Rawle, 231; *Zane* v. *Kennedy et al.* 73 Pa. St. 182; *Page* v. *Cooper,* 16 Beav. 396; *Bennett* v. *Windham,* 23 id. 526; Hawkins on Wills, 121; Story's Eq. Jur. sec. 1064 b; *Bootle* v. *Blundell,* 1 Mer. 232.

The Union Mutual Life Insurance Company were *bona fide* purchasers without knowledge, and were under no obligation to follow the application of the purchase money.

All the cases seem to agree that where a disposition of the proceeds depends, in any material particular, upon the discretion of the trustee, or where an interval must or may properly elapse between the sale and the application of the purchase money, the purchaser will be freed from liability by a payment to the trustee, and will not be responsible for a subsequent misappropriation by the latter. *Wormley* v. *Wormley,* 8 Wheat. 422; *Davis* v. *Christian,* 15 Gratt. 411; *Sims* v. *Lively,* 14 B. Mon. 433; *Coonrod* v. *Coonrod,* 6 Ham. 114; *Hauser* v. *Shore,* 5 Ired. Eq. 357; 1 White & Tudor's Lead. Cases, pt. 1, 113.

Where a trustee is required or authorized to sell and reinvest for the same trusts or purposes, the purchaser will be discharged from responsibility for the application of the money paid by him to the trustee. *Dalzell* v. *Crawford,* Peason's Eq. 37; *Lanning* v. *Peyton,* 12 Des. 375; *Redheimer* v. *Pyron,* 1 Spier Eq. 141.

The principle is a general one, and applies wherever the founder of the trust vests a discretionary power in the executor or trustee, and leaves him to determine when and how it shall be exercised. *Carrington* v. *Gadden,* 13 Gratt. 587; *Doran et ux.* v. *Wiltshire et al.* 3 Swanst. 699; *Balfour* v. *Welland* 16 Ves. \*151; *Pait* v. *Lathbury,* 35 Beav. 112.

Mr. CHARLES A. GREGORY, for the appellees Susie E. and Kate Louise Spaids:

The insurance company had notice sufficient to put them on their guard against loaning their money to T. E. Spaids, and consequently they loaned it on his personal note, or at their peril. In loaning it they participated in the breach of trust.

It is well settled rule in equity, that all persons coming into possession of trust property, with notice of the trust, shall be considered as trustees, and bound with respect to that special property to the execution of the trust. 2 Mad. Ch. 125; *The Mechanic's Bank, etc.* v. *Seaton, etc.* 1 Peters, 309; Adams' Equity, 151 and note.

The mere use of the term trustee by Spaids, in this trust deed, gives notice thereof to all into whose hands the instrument came that there is a trust. *Sturtevant* v. *Hague,* 14 Allen, 523; *Bancroft* v. *Cousen,* 13 id. 50; *Trull* v. *Trull,* 13 id. 407; *Shaw* v. *Spencer,* 100 Mass. 389; *Pulliam* v. *Cristie,* 19 Ill. 330.

1. The rule that a trustee shall not deal with the subject of the trust for his own benefit is absolute and universal, subject to no qualifications and to no exceptions. *Merriman* v. *Russell,* 39 Texas, 279.

2. An abuse of a trust can confer no right on the party abusing it or those in privity with him. *Merriman* v. *Russell,* 39 Texas, 279; 4 Kent's Com. 438; *Davoe* v. *Fanning,* 2 Johns. Ch. 252; *Tayler* v. *Plumer,* 3 M. & Selw. 574.

3. The record of the trust deed from Mrs. Harris to Spaids, and of the deed between (October, 1871,) the Union

Mutual Life Insurance Company and Harris and Spaids, was not only notice but was contract *inter se*. Ibid.

"Sound discretion" in trustee limited to the general intent of the trust. Ibid.

A fraudulent discretion is not a sound discretion. *Wormley* v. *Wormley*, 8 Wheat. 421, Condensed Reports, 473.

A trustee dealing with the trust property as his own, and this at the knowledge of the purchaser from him, is held guilty of a breach of trust, and the purchaser is held to take subject to the trust, etc.    8 Blatchford, 430.

It was negligence in them to take the mortgage or trust deed on this loan.

Where the purpose to which the money arising from the sale of lands by a trustee is required to be applied is of a definite and limited nature, it seems that the purchaser is bound to see to the proper application of the purchase money. *St. Mary's Ch.* v. *Stockton*, N. J. Eq. (4 Hals.) 520; Story's Eq. Jur. sec. 1127; *Eland* v. *Eland*, 4 Mylne & Craig, 420; *Watkins* v. *Cheek*, 2 S. 1. & Stu. 199, cited in note to 2 Story's Eq. sec. 1131a, 14th ed.

Where one known to be a trustee is found pledging trust property to secure his own debt, the act is *prima facie* unauthorized. *Shaw* v. *Spencer*, 100 Mass. 382.

In case of a general charge of debts, the purchaser need not look to the application, if he has *bona fide* paid the same; when he has once in good faith paid it into the hands of the trustee, he is exonerated. But he is not at liberty to assist in its misapplication,—he is not to buy the trust property in payment of antecedent debts, or to aid the trustee in diverting the fund from its proper uses; and if he does, a court of equity will fasten on the estate in his hands the original charge which he has attempted to displace. *Gardner* v. *Gardner*, 3 Mason, 178; *Wormley* v. *Wormley*, 8 Wheat. 421.

A person purchasing from a trustee will take subject to the trusts. *Ryan* v. *Doyle*, 31 Iowa, 53.

A voluntary settlement by a debtor upon his wife, without consideration, the grantor being solvent at the time, and the conveyance being made without fraudulent intent, is not liable to attack by subsequent creditors; and it is only void against creditors existing at the time of the conveyance, if the grantor was insolvent at the time. *Moritz* v. *Hoffman*, 35 Ill. 553. To the same effect: *Mixell* v. *Lutz*, 34 id. 382; *Wooldridge* v. *Gage*, 68 id. 157; *Phillips* v. *North*, 77 id. 243; *Sweeney* v. *Damron*, 47 id. 451; *McLaurie* v. *Partlow*, 53 id. 340.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In the view we take of this case, we do not regard it of controlling importance whether, at and prior to the conveyance in trust for the use of Kate. Louise and Susie E. Spaids, the property in controversy was, in good faith, the property of their grandmother, Susan M. Harris, or whether, in fact, it was held by her in secret trust for Talmadge E. Spaids; for, assuming the latter, and regarding him as the real owner, those who were then his creditors are not here complaining. There is no proof that he was then insolvent, and there is affirmative proof that all the debts he then owed have long since been paid, and there is no proof of collusion and fraud to deceive subsequent creditors. None others have a right now to complain that he then made a voluntary settlement upon his daughters. *Moritz* v. *Hoffman*, 35 Ill. 553; *Mixell* v. *Lutz*, 34 id. 382; *Wooldridge* v. *Gage*, 68 id. 157; *Phillips* v. *North*, 77 id. 243; *Sweeney* v. *Damron*, 47 id. 451; *McLaurie* v. *Partlow*, 53 id. 340.

There is no proof that appellant's agent, in making the loan to Talmadge E. Spaids, was induced to believe, and did believe, that he had a legal interest or title in the property different from that disclosed by the deed of trust. Indeed, it affirmatively appears that deed was shown him and left with him, for the purpose of convincing him of the authority of Spaids

to mortgage the property, and whether, therefore, there was a secret trust between Mrs. Harris and Spaids, did not, in fact, have the slightest influence upon the obtaining of the loan, and the acceptance of the deed of trust or mortgage of Spaids to secure it. Spaids, throughout that transaction, assumed to be acting as trustee, and not as owner, and was so dealt with by appellant.

The case, in our opinion, turns upon the question whether appellant is chargeable with knowledge that the loan effected by Spaids was for his own personal benefit. The power in the deed of trust authorizes Spaids to borrow money with which to pay the principal due on money secured by trust deed on the property, and to secure the payment of the money thus borrowed, with interest thereon, "by trust deed or mortgage on said premises." But this has reference, obviously, to money, the payment of which was secured in that way when the deed of trust was executed, and the removal of which, consequently, was necessary to the protection of the trust property. At that time this lot, and also lot three in the same block, were incumbered by trust deed of date July 11, 1868, executed by Susan M. Harris to appellant, to secure an indebtedness of $20,000 from her to it. But it is recited by the agreement of the 20th of October, 1871, between appellant, through its agent, Levi D. Boone, of the first part, Susan M. Harris of the second part, and Talmadge E. Spaids and Henry Hopson of the third part, that it was the intention, and was agreed by and between the first and second parties, " that each of said lots was to be subjected to a lien or incumbrance of one-half of said $20,000, or $10,000, and interest thereon, and the said party of the first part did agree to the release of said lot two from the lien and incumbrance of such trust deed; and the said Susan M. Harris did agree to and with the said third parties that she would pay and discharge the said sum of $20,000, and interest, from the proceeds of the sale of said lot three and the appurtenances, so as to release the said lot two from the incumbrance of

said trust deed, and secure the same unincumbered for the use of the said Susie E. and Kate Louise, according to ·the trust declared in the deed of conveyance of the said lot by the said party of the second part to the said party of the third part." And the evidence shows this indebtedness was paid off, discharging that deed of trust or mortgage some time before Talmadge E. Spaids effected the loan and executed the deed of trust or mortgage in controversy.

There are, however, these further clauses in the power: "And also to do any and all things with the said property, and in or about and concerning the premises, in his own discretion, which he could or would were the title to the property vested in him absolutely." And further: "Also to sell and dispose of the said property for such price and upon such terms as to him shall seem meet for the interest of the said Susie E. and Kate Louise, but he shall hold the said proceeds, and all property in which they or any part thereof shall or may be invested, upon the same trust and for the same purposes in, for and upon which said premises are hereby conveyed to him ; and he may, from time to time, sell and dispose of any such property, and the proceeds again invest from time to time, etc.; * * * and the said party of the third part may, at any time during his life, if he shall think fit so to do, pay over any and all moneys to the said Susie E. and Kate Louise, an equal amount to each, which shall come into his hands in any way from said premises hereby conveyed, either from the rents, issues and profits, or from the proceeds of the sale thereof," etc. And it is contended that, under these clauses, there was clearly power to mortgage, and that appellant, in view of such an unlimited discretion, was under no obligation to see to the application of the purchase money—that is, to see that the money borrowed was, in good faith, applied to the use of the *cestuis que trust.*

We may, for the purpose of argument, concede all this to be true, and yet it will not be conclusive of the present case.

It is well settled that where a trustee sells to pay his own debt, under a general power to sell for the benefit of his *cestui que trust,* and the purchaser at the time has notice of the fact that this is his object, he will take but a voidable title.  *Eland* v. *Eland,* 4 My. & Cr. 427; *Rogers* v. *Skilbein,* Ambler, 189; *Lloyd* v. *Baldwin,* 1 Vesey, 173; *Walker* v. *Smallwood,* Ambler, 676; *Clyde* v. *Simpson,* 4 Ohio St. 446; *Shaw* v. *Spencer,* 100 Mass. 382.

Appellant had notice of the terms of this trust.  The deed was left with its agent when application for the loan was made, and the existence of the trust is expressly acknowledged by it in the instrument of the 20th of October, 1871, —and having such notice, ample as it knew the discretion vested in Spaids to be, it had notice that he had no right to mortgage or sell the property for the purpose of using the proceeds in his own business.  Did it have notice that such was the object of Spaids in effecting this loan?

Spaids testifies that he told Boone, (whose acts and knowledge, as appellant's agent, are to be taken and regarded as its acts and knowledge,) when he applied for the money, that he wanted it to use in his starch factory,—and it is not controverted that he did so use it.

Boone, in his testimony, says: "He (Spaids) said that the former indebtedness on the property had been taken up by himself, either with his own money or money belonging to the starch company,—I don't remember which,—and that he now wanted the money to replace that in the business; that was in the course of the conversation when the question of the propriety of making the loan, when that trust deed was in existence, was under consideration."  This, in substance, is several times repeated.

Boone, it is to be remembered, had long been the general agent of appellant, and it was from him, as such, that the $20,000 loan, secured by trust deed on this lot and lot three, had been obtained by Mrs. Harris, which loan and trust deed are the subject of the agreement of October 20, 1871.  He

knew by that agreement that the former indebtedness on the property was to be paid by Mrs. Harris out of the proceeds of the sale of lot three, "so as to release the said lot two from the incumbrance of said trust deed, and secure the same unincumbered for the use of the said Susie E. and Kate Louise," so that if Spaids came forward, and out of his own means .or those of the starch company paid off that indebtedness, his recourse must be on Mrs. Harris, and not on lot two.

But Boone does not say that Spaids intended to invest this money in the stock of the starch factory for the benefit of his *cestuis que trust,* nor does he use the language of the counsel for appellant, and say that he desired to substitute it for money that had been used to take up the former indebtedness, but simply that the former indebtedness had been taken up by himself, either with his own money or money belonging to the starch company, and that he now wanted the money to replace that in the business. This is but equivalent to saying that he wanted the money for his own use, giving the reason why he needed it. Spaids says he told him he wanted to use the money in the starch factory, not to *invest* it, but to *use* it, thus implying that it was for himself. So, on this point, there is no substantial disagreement between them.

Boone should have known that this prior indebtedness was satisfied from the proceeds of the sale of lot three. The fact is in proof that it was so satisfied near three years before, and Boone had made himself a party to an agreement whereby it was to be so satisfied. Under that agreement there was no authority for Spaids to pay off the indebtedness, either with his own money or with that of the starch factory, and execute a new trust deed or mortgage to secure a loan to replace such money. So much of the original power as may have authorized such a transaction was revoked and cancelled by the effect of that agreement, and this Boone must be charged with knowing. If he did not, in fact, know it, it was his duty to have known it, and the result is the same.

Boone further testified, that Spaids, at the time of apply-ing for the loan, said, in substance, that the property was his, "and that it was placed in Mrs. Harris' name for con-venience sake,"—something to that effect.  He also referred to the provisions of the trust deed at the same time, showing his right to manage it as though it were his, and to "sell it or dispose of it in any way he thought best, as though it were his."  Spaids denies that he told Boone that the prop-erty was his, but says, in another conversation, and as to another lot, he did so state; but he agrees with Boone, that he did try to convince him that the trust deed conferred power upon him to effect the loan and secure it by deed of trust or mortgage on the property.  He says that he and Boone were old acquaintances; he had negotiated other loans for Mrs. Harris of him, which had all been paid, and he showed Boone the trust deed, so he knew what its terms and conditions were.

It is quite probable, indeed we think the most reasonable view of all the evidence, that Boone trusted to the general terms of the power, incorrectly supposing them to be com-prehensive enough to justify any disposition whatever that Spaids might choose to make of the property, and to the ability and fidelity of Spaids as a business man in protecting his paper.  It seems, also, that he reserved to himself $500 as compensation for his services in this transaction, and it is possible that his anxiety to obtain this may have, (it may be, insensibly to himself,) in some measure, allayed his watch-fulness, and impelled his judgment to a wrong conclusion.

We are not satisfied, on the whole, that the court below erred, and its decree will, therefore, be affirmed.

*Decree affirmed.*