HARRY Y. VICTOR *et al.*, Appellees, *vs.* HERBERT HILLE-BRECHT *et al.*, Appellants.

*Opinion filed January 18, 1950—Rehearing denied March 20, 1950.*

WINSTON, STRAWN, SHAW & BLACK, of Chicago, and HENRY I. GREEN, of Urbana, (JAMES H. CARTWRIGHT, of counsel,) for appellants.

SHULMAN, SHULMAN & ABRAMS, of Chicago, (MEYER ABRAMS, of counsel,) for appellees.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Plaintiffs, appellees here, filed a complaint in equity in the superior court of Cook County for the liquidation of a trust, accounting and other relief. The chancellor dismissed the suit for want of equity. Upon appeal to the Appellate Court, First District, the decree of the trial court was reversed and the cause remanded with directions that a decree be entered in accordance with the views expressed therein, and directing the removal of the trustees. The case comes to this court on leave to appeal.

The property forming the subject matter of the trust is a sixteen-story apartment-hotel building, containing 148 furnished apartments and 31 unfurnished apartments and is located at, and is known as, the 7000 South Shore Drive Building. On November 6, 1935, a liquidation trust agreement was executed pursuant to a plan of reorganization instituted under section 77B of the Bankruptcy Act, wherein the defendants Herbert Hillebrecht, James V. Bremner and Walter A. Wade were appointed Trust Managers, and the Trust Company of Chicago was made the liquidation trustee. The plaintiffs are owners and holders of beneficial trust certificates and instituted the suit as a representative proceeding against the trust managers, the liquidation trustee and Herbert Hillebrecht, individually, as defendants.

The complaint, filed February 27, 1946, alleges the purpose of the plan was to liquidate the property and convert the same into cash for the benefit of holders of the participation certificates, the trust agreement providing for the sale of the property, upon notice to the then holders of the units, no such sale to be made by the liquidation trustee if, within 20 days after such notice, $33\frac{1}{3}$ per cent or more of the certificate holders filed written dissents from such

sale, with no duty to exercise such power of sale unless directed to do so by the trust managers; determination of the trust was to occur upon such sale in the sole discretion of the trust managers, but in all events, the trust shall terminate on July 1, 1950; that defendant Hillebrecht acquired, by purchase, trust units in excess of 33⅓ per cent thereof at various prices below their actual value under arrangements with various brokerage houses and defendants failed to disclose pertinent information to the certificate holders; several offers had been communicated to the trustees but were never submitted to the unit holders, claiming Hillebrecht was in a position to and did block any sale; a fair appraised price of $850,000 was offered and that the trust managers advised the liquidation trustee to submit this last proposal with the recommendation not to sell, which they assert the defendant trust managers had no right to do. The complaint further charges a violation of their trust by placing themselves in an adverse position to the interests of the beneficiaries; prays that the trust managers be held to hold the units purchased in trust for plaintiffs and other unit holders; that a breach of trust be found; that the property be sold under court control and supervision; for an accounting; and for the removal of the trustees.

The defendants answered admitting certain plaintiffs were original investors; that defendant Hillebrecht owns only *circa* 1450 units of the total issued of 14,439 and that he received 35 units in the original reorganization in exchange for his bonds, remainder having been purchased through Greenebaum Investment Company, which at all times maintained an active market in the certificates, and paid prices ranging from $19 per unit to $51.50 per unit; denied the trust managers ever made available to anyone the lists of unit holders and that they mailed to the certificate holders annual statements of cash receipts and disbursements prepared by a certified public accountant which

disclosed the information reasonably necessary for the certificate holders to form their own opinions of the real value of their securities. The answer further admits the receipt of various offers but asserts they were not sufficient to be in the best interests of the security holders and no fair price has yet been offered, and deny failure to sell has been due to any adverse interest; defendants further allege the offer of $850,000 received was a conditional one to be accepted in 30 days with the right to receive higher bids and they believed it their duty to so advise the persons interested and that their intended communication was for the benefit of all unit holders.

The trial was of short duration and the only witness called was the defendant Hillebrecht, who testified for the plaintiff as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1949, chap. 110, par. 184.) The balance of the testimony was admitted by stipulation of the parties, including the purchases made by the defendants Hillebrecht and Wade together with the various members of their families, all of which purchases, totalling less than 13 per cent of the outstanding total, were made through Greenebaum Investment Company, which company had sold the original bond issue on the property which was in the sum of $1,350,000. Insurance was placed upon the building based on a value of $1,550,000.

Hillebrecht testified he was the resident manager of the building and devoted practically all of his time thereto, thereby effecting a saving to the trust of $6000 to $6700 per year; that he received as compensation for his duties as trust manager the sum of $333.33 per year and a small apartment renting for $65 per month; annual reports were sent to shareholders and several dividends were paid; that it was his honest conviction that an offer for a high enough price had not yet been received and therefore no proposition had as yet been submitted; that the property and furnishings are in excellent condition and that he had spent

$2300 out of his own funds to protect the building on the purchase of linens; that before this suit was started, the trust managers had decided to submit the $850,000 offer without recommendation; that nevertheless the trust managers wrote a letter to the liquidation trustee, introduced as exhibit "B" and dated February 15, 1946, twelve days before the complaint herein was filed, in which they stated they had concluded to advise the owners of the certificates against the sale at that figure, and Hillebrecht stated if it had come to a vote he would have voted against it; that he had 35 units originally in exchange for his bonds and purchased the various additional units at different times always upon the solicitation of Greenebaum and in order to do so he had switched certain of his securities, for which he had paid 100 cents on the dollar; that his object in buying was to protect the trust from pressure groups on the outside who were trying to force a sale at a low price; and that he or the trustees never at any time furnished lists of certificate holders to Greenebaum, or to anyone else.

The trust agreement provided for the appointment of the trust managers and contained this provision, "Trust Managers, may, but need not, be holders of participation certificates. The rights of any holder of participation certificates to deal freely with Liquidation Trustee and Trust Managers shall not be affected by his being a Trust Manager."

Counsel admit there is no case in Illinois or elsewhere directly dealing with a purchase as shown by the precise facts here presented and we are called upon to decide the case upon analogous reasoning and the application of general principles governing the law of trusts and trustees and their duties to their beneficiaries.

The broad general rule that a trustee may not purchase from himself and at his own sale is universally recognized and is a stern, unbending rule which we have no desire to deprecate. That rule is conceded by the appellants here.

But there are certain exceptions to the rule which are as well established as the rule itself. One is that a trustee may purchase trust property for his own benefit where the trustee could not have any control over the sale. *Allen* v. *Gillette,* 127 U.S. 589; 54 Am. Jur. "Trusts," par. 458, p. 365.

Nor is there any rule of law or equity which prevents a beneficiary of a trust, who is under no incapacity, from disposing of his interest in the trust estate for a consideration; (65 C.J. 546, "Trusts," sec. 303; id. 774, sec. 645,) and a beneficiary may sell his interest in the trust to the trustee. (*Masterson* v. *Wall,* 365 Ill. 102; Bogert on Trusts and Trustees, Vol. 1, sec. 188.) Even a sole trustee can likewise be one of several beneficiaries of a trust and a person has capacity to receive a transfer of the beneficial interest under a trust to the extent that he has the capacity to be beneficiary of the trust. Restatement of the Law of Trusts, 339, sec. 133.

It is not feasible within reasonable limits to discuss all of the cases cited by counsel. Many volumes and a large number of decisions have been written upon this subject. The inflexibility of the rule of disability of a trustee to purchase assets of his trust is well founded and the reasons therefor are many. Yet, there are likewise many cases, in special circumstances, where the reasons for the rule disappear and when this situation obtains it does not apply. Most of the cases reviewed and which strictly apply the rule are cases where the trustee purchases an encumbrance upon or claim against the trust property. This, however, is not synonymous with the interest of a beneficiary. Others are cases where the beneficiaries were under disability or they are cases which place the trustee in a position of holding an interest adverse to the beneficiary. The interest of a beneficiary is not an encumbrance on the trust estate, nor a claim which is adverse to the trust. A trustee is under no duty to purchase the interest of one beneficiary for the

advantage of another beneficiary. Such a course of action and conduct on the part of a trustee would in itself constitute a breach of trust. All beneficiaries of a trust are entitled to receive their full share or interest in the trust estate and the assignee of that interest, whether the trustee or some other party, takes the interest in the trust estate which the assignor had, in the absence of fraud. *American Bank and Trust Co.* v. *Lebanon Bank & Trust Co.* 28 Tenn. App. 618, 192 S.W. 2d 245, (*certiorari* denied.)

In *Froneberger* v. *Lewis,* 79 N. C. 426, 77 A.L.R. 1511, the court said: "There are a class of cases which have to be distinguished from the general rule as follows: whereever the trustee has a personal interest in the trust property, there of course he must have the right to protect it, and if to bid for and buy it be necessary to protect it, he must be allowed to do it for that purpose."

In *Brown* v. *Cooper,* 62 Tenn. 153, the trustee purchased the interests of certain beneficiaries of the trust at a discount. Other subordinate beneficiaries sought to recover the profit thus made by the trustee on the ground that such profit inured to their benefit. The court rejected that contention and held the assigning beneficiaries had a right to transfer their interests to the trustee, that he was entitled to receive the full pro rata shares which would have gone to his assignors and that the remaining beneficiaries could not object. In conclusion, the court said: "This is not the case * * * of a trustee purchasing claims against the trust estate at a discount in which the purchase would inure to the benefit of those owning the trust estate; but it is a purchase by the trustee of the trust property or estate itself and being fairly done, the trustee succeeds to the interest of his vendors."

It is highly significant in the case at bar, that the plaintiffs suing are not the beneficiaries who have sold their units upon the open market. All of the plaintiffs here are

present certificate holders and, as far as the record discloses, none have parted with any of their interests. No one has come forward here who has sold his or her certificates. On the other hand, bids have increased from $500,000 or thereabouts to $850,000, and the plaintiffs, so far at least, have been benefited by the action of the trust managers in refusing to submit or recommend a sale of the very valuable trust *res* forming the subject matter of this trust, property originally bonded in the sum of $1,300,000 and insured for a million and a half. True, the purchasing defendants, if the property is eventually sold for more than that bid, will stand to profit handsomely by the sale. However questionable the practice of bidding in these certificates on the market by the trustee may be, we think these plaintiffs are in no position to complain because they have not been hurt and any gain accruing to the defendants Hillebrecht and Wade will likewise proportionately accrue to plaintiffs. The transactions at best are merely voidable, not void. 26 R.C.L. 1375, par. 236.

In *American Bank and Trust Co.* v. *Lebanon Bank & Trust Co.* 28 Tenn. App. 618; 192 S.W. 2d 245, (*certiorari* denied,) the court said: "The interest of a beneficiary and the interest of the trust are the same. If the interest of the trust is promoted, the beneficiary is benefited thereby to the extent of his interest in the trust. A transfer of a beneficial interest to the trustee has the effect of transferring to the trustee that part of the trust which the beneficiary had. Neither complainant nor other beneficiaries had any interest in the transaction under the facts of this case. * * * The assignor does not complain. Complainant cannot do so for want of interest." We think this reasoning applies in this case.

The complaint in the case at bar is predicated upon the theory that defendants purchased a sufficient number of units to block any sale, 33⅓ per cent thereof being sufficient

for this purpose, but the proof shows the defendants Hillebrecht and Wade together owned only about 11 per cent thereof and, with all the members of their families, owned less than 13 per cent. Aside, therefore, from any variance or stipulation not to take advantage of any variance, the proof falls far short of establishing control over any offer of sale. This failure of proof carries with it the principal basis of the complaint.

The defendants were selected by the Federal court for the purpose of exercising their judgment and best opinion in the matter of the sale of this property. The trust instrument, binding on all, provides the sale shall be at the sole discretion of the trust managers. To date an adequate price, in their opinion, has not been offered nor has the value of the property recovered to an extent which would warrant a submission of the matter of sale to a vote. In this their opinion may be quite correct. We hold they were not bound to submit any bid under this showing and the court cannot compel the trustees to exercise a discretion given to them by the express terms of the agreement.

Hillebrecht and Wade had no choice or control over the offering of the shares sold. The selling securities owners, in the exercise of their judgment, wished to dispose of their units, made as easily saleable and assignable as stock certificates by the terms of the trust agreement under which their interests arose. The assignors had received statements, and annual dividends, and had the opportunity, open to all, to visualize and inspect the property itself. Any number of reasons may have motivated their placing their shares for sale in the hands of Greenebaum Investment Company, which company maintained an active market for the 14,439 units issued. The defendants could in noway control the offers of those certificates of beneficial interest on the open market. They paid the prevailing market price or more. The record shows they at no time solicited purchases. On the facts shown here we cannot say they had no right to

buy and that, as against plaintiffs, defendants committed a breach of trust. In view of this conclusion, no question of the removal of the trust managers arises.

For the reasons assigned, the judgment of the Appellate Court is reversed and the decree of the trial court dismissing the suit for want of equity is affirmed.

*Appellate Court reversed; superior court affirmed.*