(No. 54454.—

HOME FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Appellee, v. KAREN ZARKIN *et al.* (Karen Zarkin *et al.,* Appellants; Devon National Bank, Appellee).

*Opinion filed January 21, 1982.—Rehearing denied March 25, 1982.*

234

SIMON, J., took no part.

Robert E. Senechalle, Jr., of Senechalle & Murray, P.C., and Marshall A. Levin, both of Chicago, for appellant.

Ernest D. Simon, of Greenbaum & Browne, of Chicago, for appellee Devon Bank.

JUSTICE CLARK delivered the opinion of the court:

The facts of this case are stated in detail in the opinion of the appellate court. (90 Ill. App. 3d 1002.) Briefly, in March 1976 Karen and Leon Zarkin (appellants) created a conventional Illinois land trust of their residence property in Chicago with Devon National Bank (appellee) as trustee and themselves as beneficiaries. Devon, as trustee, at the Zarkins' direction, executed a first mortgage of the trust property with Home Federal Savings and Loan Association as mortgagee.

Some time later, the Zarkins ran into financial difficulties. From May 1977 on, they made no payments to Home Federal on the first mortgage. In August 1977, they borrowed $14,000 from Devon. This, however, was insufficient to alleviate their financial plight. They were unable to repay the loan from Devon when it came due in November 1977. At this point, with their loan in default, the Zarkins assigned their beneficial interest in the land trust, of which Devon was trustee, to Devon to secure the repayment of the $14,000 loan.

In December 1977 Home Federal sued Devon, as land trustee, and the Zarkins in the circuit court of Cook County to foreclose its first mortgage. Devon, in its answer, alleged the debt due it from the Zarkins and the assignment to it of their beneficial interest. On June 8, 1978, the circuit court entered a decree of foreclosure. The decree found the mortgagee entitled to $63,254.50, and Devon entitled to a lien in the amount of $14,626.25, subordinate to Home Federal's mortgage lien. The property was ordered sold and the redemption period determined.

At the sheriff's sale on July 13, 1978, Home Federal bid in the property for the amount of its judgment plus certain costs. Devon did not bid at the sale. However, on January 5, 1979, eight days before the expiration of the

redemption period, Devon, without notifying the Zarkins, purchased the certificate of sale from Home Federal.

Immediately upon learning of this action, the Zarkins filed a petition in the circuit court. It asserted that Devon's purchase of the certificate of sale from Home Federal amounted to a redemption of the property from the foreclosure sale, and that as a result the redemption period had been terminated. It further asserted that Devon's action was a breach of its fiduciary duty as trustee, and requested the circuit court either to set aside the sale to Devon and extend the redemption period to enable them to redeem, or to decree that Devon had redeemed as trustee for the Zarkins' benefit, and enjoin Devon from taking any further action with respect to the property. The circuit judge denied the petition, and the Zarkins appealed. On November 26, 1980, the appellate court, with one justice dissenting, affirmed the judgment of the circuit court. 90 Ill. App. 3d 1002.

The question presented by this appeal is: What is the effect of a land trustee's purchase, after the foreclosure sale but during the redemption period, of the certificate of sale covering trust property that was sold under a decree of foreclosure?

Devon asserts that it owns the property, having purchased the certificate in its individual capacity and not as trustee. It was entitled to do so, it contends, because as a creditor of the Zarkins it was entitled to protect the collateral securing its debt. Devon further contends that, under the trust agreement, it had no duty to redeem as trustee for the Zarkins, and indeed that it could not legally have done so without their authorization. Finally, Devon argues that even if its purchase were viewed as a redemption from foreclosure by a junior lienor, the Zarkins suffered no harm, since Devon's redemption did not affect the Zarkins' right as mortgagors to redeem

during the remainder of the period and obtain the certificate from Devon or whoever was holding it at the time.

The Zarkins insist to the contrary that Devon could not become owner of the property in its individual capacity. By purchasing the certificate of sale, they contend, Devon purchased its own trust property, in breach of its fiduciary duty of loyalty. The Zarkins rely on the proposition that a trustee's duty to administer the trust with complete loyalty to the interests of the beneficiary precludes it from dealing with the trust property for its individual advantage or profit, or from purchasing trust property in circumstances such as are presented here.

This court has dealt with Illinois land trusts on only a few occasions. For the most part, the cases which have arisen have involved the nature of the interests held by beneficiary and trustee, and the legal consequences of the paradoxical characterization of the beneficiary's interest as personal property, although the subject of the trust is realty. (*Horney v. Hayes* (1957), 11 Ill. 2d 178; *Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535; *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479.) A brief description of the conventional land trust arrangement can be found in our recent opinion in *People v. Chicago Title & Trust Co.*, and lengthier discussions in H. Kenoe, Kenoe on Land Trusts (Ill. Inst. Cont'g Legal Educ. 1981), and in Turner, *Some Legal Aspects of Beneficial Interests under Illinois Land Trusts,* 39 Ill. L. Rev. 216 (1945).

The Illinois land trust represents an adaptation of the trust device to achieve ends not usually associated with the "traditional" private express trust. (Garrett, *Land Trusts,* 1955 U. Ill. L.F. 655, 659-62.) The history of trust law contains many such adaptations of the ancient form to new uses. The trust's extraordinary flexibility permits variations as diverse as the voting trust, the Massachusetts business trust, the real estate investment trust, and the Illinois land trust. (*Hanley v. Kusper* (1975), 61 Ill. 2d 452,

461; *Schumann-Heink v. Folsom* (1927), 328 Ill. 321, 325-27.) As different as are their purposes, however, all these trusts have a common feature: each has a trustee (or trustees) and each has beneficiaries. We consider that, at least as to matters touching this relationship—which is, after all, the core of a trust—land trusts are to be treated no differently from any other trust. As the court observed in the *Schumann-Heink* case, in holding that general trust-law principles applied to a case involving a Massachusetts business trust: "Because a new use is being made of the trust does not mean new principles of law are to be applied in determining the rights of the trustees, the *cestuis que trust* or persons dealing with the trustees." (328 Ill. 321, 327.) Land trustees in Illinois, therefore, are subject to the fiduciary duties imposed by the law on all trustees; and the general principles of trust law regarding these duties govern the decision of this case.

It has been suggested that since the land trustee's powers are limited, under the typical land trust agreement, to acting only when and as the beneficiary directs, the trustee has no duties other than those specified by the trust agreement. We cannot agree. The fiduciary obligation of loyalty flows not from the trust instrument but from the relationship of trustee and beneficiary. The essence of this relationship is that the former is charged with equitable duties toward the latter. The law imposes the duty, whether the trust instrument mentions it or not. 2 A. Scott, Trusts secs. 170, 164 (3d ed. 1967); Restatement (Second) of Trusts sec. 164, comment *h* (1959).

The trustee's duty to serve the interests of the beneficiary with complete loyalty, excluding all self-interest, prohibits him from dealing with the trust property for his individual benefit. (*Central Standard Insurance Co. v. Gardner* (1959), 17 Ill. 2d 220, 235; G. Bogert, Trusts sec. 543 (2d ed. 1978).) The purchase by a trustee for his own account of property of his trust is a breach of this duty. (*Victor v. Hillebrecht* (1950), 405 Ill. 264, 268;

*Bennett v. Weber* (1926), 323 Ill. 283, 293-94; *Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 472-75; G. Bogert, Trusts sec. 543(A) (2d ed. 1978).) The reason for the prohibition on trustees' purchases of trust property is that a trustee in this position would find it in his own best interest to violate his duty to his beneficiary: as purchaser, the trustee is naturally interested in acquiring the property at the lowest possible price, while loyalty to the beneficiary dictates that he seek to obtain the highest possible price. The policy of the rule is to remove the danger created by the conflict of interests by making purchases of trust property by trustees voidable at the beneficiary's option, thus removing the temptation to trustees to engage in them. *Bennett v. Weber* (1926), 323 Ill. 283, 294; *Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 473-74; 2 A. Scott, Trusts sec. 170.4 at 1309 (3d ed. 1967); G. Bogert, Trusts sec. 543(A), at 222 (2d ed. 1978).

The trustee may not purchase trust property in a private transaction, or, under the prevailing view, at a public auction or foreclosure or other judicial sale that was brought about by the trustee. The majority of jurisdictions hold that the prohibition extends to purchases at a sale held on foreclosure of a third party's lien. (2 A. Scott, Trusts secs. 170.1 to 170.7 (3d ed. 1967); G. Bogert, Trusts sec. 543(C), at 247 (2d ed. 1978).) The reason is that even when the trustee does not conduct the sale and had no hand in bringing it about, if he is allowed to purchase for his own account, self-interest might tempt him to try—directly or indirectly—to keep the price down. (2 A. Scott, Trusts sec. 170.5, at 1311 (3d ed. 1967).) See also *City of Chicago v. Hart Building Corp.* (1969), 116 Ill. App. 2d 39 (receiver violated fiduciary duty when he acquired title to receivership property by buying, through nominees, agents, and land trusts, at foreclosure sales after paying mortgagor not to attend sales and acquiring

interest of mortgagee who was successful bidder at sale). A minority of jurisdictions allow the trustee to bid for and acquire trust property at a public foreclosure sale initiated by a third party, if the sale was fairly conducted. G. Bogert, Trusts sec. 543(C), at 247 (2d ed. 1978).

Several jurisdictions have recognized exceptions to the general rule and permitted a trustee's purchase of trust property to stand where under the circumstances of the case the reason for the prohibition ceased to exist (for example, where there is no possibility of advantage to the trustee, or the purchase is necessary to protect the interest of the beneficiary). (76 Am. Jur. 2d *Trusts* sec. 463 (1975); 3 J. Pomeroy, Equity Jurisprudence sec. 958(b) (5th ed. 1941).) *Victor v. Hillebrecht* (1950), 405 Ill. 264, on which the appellate court relied in holding that Devon did not breach its duty to the Zarkins when it purchased the certificate of sale from Home Federal, was such an exceptional case. Hillebrecht, who was trust manager of a liquidation trust set up following a court-ordered reorganization of an apartment hotel, bought participation certificates representing an interest in the trust. A number of factors appear to have influenced the court's decision that this was not a breach of his fiduciary duty. In the first place, the trust agreement authorized trust managers to own participation certificates. (Indeed, Hillebrecht, originally a bondholder of the bankrupt hotel company, had received some of his participation certificates in exchange for his bonds under the reorganization plan.) In addition, a main consideration appears to have been Hillebrecht's inability to control the circumstances of the sale of the participation certificates or their price. The certificates were actively traded on the open market; Hillebrecht did not solicit or induce the other beneficiaries to sell, but bought on the open market through a broker; the price paid was the prevailing price of publicly traded certificates. The facts of the case are in marked contrast to those in

the case at bar. Here Devon approached Home Federal and offered to buy the certificate of sale in a private transaction at a price proposed by it. Home Federal could not know whether the mortgagors were redeeming, in which case it would have no right to resist a tender by Devon of the amount it had paid for the property at the foreclosure sale. In effect, Devon controlled the terms of the transaction.

We do not think *Victor* can or should be held to validate Devon's action in this case. It certainly cannot be interpreted as holding that Illinois has adopted the minority position approving trustees' purchases at a third party's foreclosure sale.

Devon, however, urges that its purchase of the certificate of sale falls within another exception to the general rule, mentioned in *Victor*: that it is not a breach of the duty of loyalty for a trustee who has an individual interest in the trust property to purchase at a forced sale in order to protect its interest. (*Victor v. Hillebrecht* (1950), 405 Ill. 264, 270, quoting *Froneberger v. Lewis* .(1878), 79 N.C. 426.) Devon contends that it was entitled to purchase the trust property to protect its interest as a secured party under the collateral assignment of the Zarkins' beneficial interest. We have found no case holding a trustee's purchase valid on facts similar to the facts in this case. Though there have been cases in which courts have declined to strike down a fiduciary's purchase at another's foreclosure sale, most of them have involved executors or administrators who were also joint beneficiaries of the estate of the decedent. (G. Bogert, Trusts sec. 543(C), at 253 (2d ed. 1978); 76 Am. Jur. 2d *Trusts* sec. 464 (1975).) In other cases it appeared that the purchase had been agreed to or otherwise ratified by the beneficiaries (*Swineford v. Virginia Trust Co.* (1930), 154 Va. 751, 152 S.E. 350; *Barnes v. Lyles* (1918), 110 S.C. 465, 96 S.E.

723) or had been approved by the court (*Corbin v. Baker* (1901), 167 N.Y. 128, 60 N.E. 332). On the other hand, several decisions have held that a trustee who was interested in the trust property as a creditor could not acquire title to the property free of trust by purchasing at a third party's foreclosure sale. *Pearson v. Pearson* (1946), 227 N.C. 31, 40 S.E.2d 477; *Hamilton v. Dooly* (1897), 15 Utah 280, 49 P. 769; *In re Standard Commercial Tobacco Co.* (D.N.Y. 1940), 34 F. Supp. 304.

We think the latter rule is the correct one. The situation is comparable to that of a trustee who purchases in his own name an outstanding encumbrance on the trust property, or acquires a title adverse to the beneficiary's. In these cases the trustee's action constitutes a breach of trust, and he is deemed to hold the encumbrance for the benefit of the trust. The trustee is not permitted to foreclose the encumbrance against the trust property or to derive any profit from the transaction. *Earll v. Picken* (D.C. App. 1940), 113 F.2d 150, 155-57; G. Bogert, Trusts sec. 543(D) (2d ed. 1978); 90 C.J.S. *Trusts* sec. 249 (1955).

The fact that Devon had an individual security interest in the trust property, by agreement with the Zarkins, could not affect its duty of loyalty to them. Beneficiaries who serve as trustees have a duty of loyalty to their co-beneficiaries, despite their individual interest in the trust, and are not permitted to use their fiduciary capacity to advance their own interests at the expense of their co-beneficiaries. (90 C.J.S. *Trusts* sec. 248, at 253 (1955).) Similarly, trustees who acquire an individual interest in the trust property by becoming creditors—whether by making advances for the benefit of the trust, or by buying an encumbrance on the trust property—may have an equitable lien on the trust for reimbursement, but are not relieved of their fiduciary obligations. (*Earll v. Picken* (D.C. App.

1940), 113 F.2d 150, 156; *Hamilton v. Dooly* (1897), 15 Utah 280, 305, 49 P. 769, 777.) The trustee-creditor cannot indemnify himself by treating trust property as his own *(Bennett v. Weber* (1926), 323 Ill. 283, 294), nor can he transfer trust property to himself in satisfaction of a debt owed him by the trust *(Electronic Development Co. v. Robson* (1947), 148 Neb. 526, 28 N.W.2d 130).

Devon's fiduciary duty of loyalty would have precluded it from purchasing the trust property for its own account by bidding it in at Home Federal's sale. We hold that that duty likewise prohibited Devon from later acquiring the certificate of sale from Home Federal in a private transaction. Regardless of any good-faith belief that its action was justified, Devon's purchase of the certificate was not consistent with a trustee's obligation not to deal with trust property for its individual advantage. *In re Will of Gleeson* (1955), 5 Ill. App. 2d 61, 64-65; *Hamilton v. Dooly* (1897), 15 Utah 280, 298-99, 49 P. 769, 774-75.

There is sound reason in policy for holding land trustees in Devon's position to a strict standard of loyalty. It is to prevent trustees from taking personal advantage of their position that the duty of loyalty is imposed. (*Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 473-74.) A land trustee by virtue of its position is likely to have information concerning the trust property and, more to the point, knowledge of the financial circumstances of its beneficiaries—whether, for instance, they are likely to redeem from foreclosure. A trustee that becomes a creditor of its beneficiary is particularly susceptible to the temptation to prefer its own financial interests over the interests of the beneficiary. We find the reason for the rule here in full force.

Where a trustee has purchased trust property in breach of the duty of loyalty, the beneficiary has several possible alternative remedies. If the trustee has not resold the

property, he can be compelled to reconvey to the trust and to account for any income received from the property; or he can be ordered to offer the property for sale, and if it is sold for more than the amount the trustee paid for it, the trustee will be accountable for the excess; or, if the trustee has purchased the property below its actual value, he may be allowed to keep it but required to pay the beneficiary the difference between the value at the time of purchase and the amount he paid for it. Whichever course is followed, the trustee is entitled to receive the consideration he paid for the property, with interest. (2 A. Scott, Trusts sec. 170.2 (3d ed. 1967); *Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 475.) Devon, therefore, will be entitled to an equitable lien on the property for the amount it paid Home Federal, plus interest, the satisfaction of which is a condition of reconveying to the trust; or, if the property is resold, Devon is entitled to have its lien satisfied from the proceeds. *Bennett v. Weber* (1926), 323 Ill. 283, 294-95.

Whether the beneficiary has suffered a loss as the result of the fiduciary's disloyal act is irrelevant to the former's right to have the transaction set aside and recover any profit made. (*Winger v. Chicago City Bank & Trust Co.* (1945), 325 Ill. App. 459, 474; *In re Will of Gleeson* (1955), 5 Ill. App. 2d 61, 65.) Consequently, it is not necessary for us to determine whether the Zarkins had a right of redemption or whether that right was affected by Devon's purchase of the certificate.

Finally, there is the matter of Devon's claim against the Zarkins for the $14,000 loan which they did not repay, and for which Devon later took the assignment of their beneficial interest as security. Fiduciaries are not prohibited from having such direct dealings with their beneficiaries, but such transactions are subject to special scrutiny by the courts, and the burden is on the fiduciary

to show that the transaction was fair. (*McFail v. Braden* (1960), 19 Ill. 2d 108, 117-18; G. Bogert, Trusts sec. 544 (2d ed. 1978).) A beneficiary can consent to a transaction that the duty of loyalty would otherwise prevent a trustee from undertaking, provided that the consent is given voluntarily after full disclosure by the trustees of all facts, and there is no overreaching. (G. Bogert, Trusts sec. 543(U), at 382 (2d ed. 1978).) As we have already noted, Devon's duty of loyalty would preclude its acquiring an interest in the trust adverse to that of the Zarkins, and we think the rule extends to the acquisition of a lien on their beneficial interest. The record does not disclose the circumstances either of the loan or of the subsequent assignment to Devon of the Zarkins' beneficial interest. Unless Devon carries its burden of proving the fairness of these transactions, the disclosure to the Zarkins of the conflict of interests, and the Zarkins' consent, they will be set aside. If, however, Devon is able to make this showing, then its claim will be allowed, together with such interest as the circuit court deems just.

The judgment of the appellate court affirming the circuit court's judgment is reversed; the circuit court is reversed, and the cause is remanded to that court for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE SIMON took no part in the consideration or decision of this case.