JEAN CHARLES BRITTON *et al.*, Plaintiffs-Appellees, *v.* PAUL J. WINGER, Indiv. and as Trustee of Trust Agreement No. 1, *et al.*, Defendants-Appellants.—(Patrick Britton *et al.*, Defendants.)

Fourth District   No. 4—82—0093

Opinion filed November 5, 1982.

Costigan and Wollrab, of Bloomington (James P. Ginzkey, of counsel), for appellants.

Evans and Davis, of Kingfisher, Oklahoma, and Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Whedon Slater, of counsel), for appellees.

James DePew, of Bloomington, guardian *ad litem.*

JUSTICE WEBBER delivered the opinion of the court:

Defendant trustee appeals from an order of the circuit court of McLean County, the effect of which is to create a constructive trust in favor of the plaintiff beneficiaries in an undivided interest in the farmland which is the corpus of the trust. While we feel that the plaintiffs and the trial court were too lenient with the defendant, it is not our province to impose a harsher remedy and we therefore affirm.

During his lifetime Charles W. Winger created an *inter vivos* trust whose corpus consisted of 240 acres of farmland in McLean County. Defendant was named trustee and the beneficial interests were: (1) Paul, settlor's son and trustee, one-sixth, and Gladys, his wife, one-sixth; (2) Carlos, settlor's son, one-sixth and Rose, his wife, one-sixth; (3) Jean Charles Britton and Jane Britton Thomas, plaintiffs, and Patrick Britton, defendant, being the children of a predeceased daughter, one-ninth each. The trust instrument contained some uncommon provisions for a trust of farmland. These included a direction to divide into separate trusts for each beneficiary and that the interest of each beneficiary be personal property; further, that any beneficiary who had attained the age of 21 years could demand his share of the corpus. Since the 240 acres are of uneven quality, it is difficult to see how such provisions could be implemented.

The controversy at hand arose out of the death of Carlos in 1965. He was apparently a resident of the State of Oklahoma and died intestate. Under the laws of that State his one-sixth interest descended in halves, one-half to his wife, Rose, and the other one-half to his father, the settlor of the trust, who was still living. According to the testimony, the settlor then conveyed this one-twelfth to the defendant individually and not in trust. Rose then indicated a desire to dispose of her entire interest in the trust, that is, the one-sixth received under the trust instrument and the one-twelfth received from her deceased husband.

Defendant, according to his testimony, considered various options concerning Rose's share: (1) to buy her share for the trust; (2) to buy her share for the plaintiffs and Patrick individually; (3) to buy her share for himself individually; or (4) to sell her share to a third party. For various reasons, he rejected all of the options except (3), *viz.*, purchase for himself individually. He assigned as reasons for the rejection of the others the following: as to (1): the trust did not have funds available; as to (2): the plaintiffs and Patrick did not have funds avail-

able; as to (4): there was no 60-acre tract within the 240-acre corpus which could easily be deeded out to a third party.

In order to finance the purchase for himself, he sought a loan from the Federal Land Bank. His testimony was that he intended to mortgage only his share and that of his wife Gladys, *i.e.*, two-thirds, but that the Bank insisted on a mortgage of the entire corpus. The loan was consummated in 1967; defendant signed the note and mortgage in his individual capacity as well as trustee. Rose then conveyed all of her undivided interest in the 240 acres to defendant individually.

No evidence was introduced to show that a similar financing arrangement would not have been possible for purchase of Rose's share for the trust itself.

In 1979 defendant wrote to the plaintiffs and indicated that he and Gladys intended to take their share out of the trust. The settlor had made two separate conveyances into the trust, one of 160 acres, and a second of 80 acres. In his correspondence defendant laid claim to the 160 acres and stated that plaintiffs and Patrick were free to do what they desired with the 80 acres. Plaintiffs thereupon consulted an attorney and the upshot was the filing of the instant lawsuit.

The amended complaint was in two counts: count I sought the imposition of a trust on Rose's one-quarter share for the benefit of all parties in interest; count II sought partition. Count II was eventually dismissed. The trial court allowed the relief sought in count I, decreeing that all beneficiaries share in Rose's one-quarter and directing that from and after October 13, 1981, all income from the trust be distributed in the proportions set forth in the order.

On appeal defendant raises two issues: (1) that he did not breach his fiduciary duties in mortgaging the trust corpus, and (2) that the imposition of a constructive trust was an improper remedy.

As to the question of breach, defendant makes two arguments: first, that it was error for the trial court to exclude from evidence certain letters written by the settlor prior to the execution of the trust instrument which indicated that he intended the 160 acres to go to Paul and Carlos and their wives and the 80 acres to the plaintiffs and Patrick; second, that there is a latent ambiguity in the mortgage. We find merit in neither argument.

■ Even if we assume that the settlor's general intent was as argued, there is nothing to indicate that he would permit the mortgaging of the property of the other beneficiaries to carry it out. Thus the letters purporting to indicate intent were irrelevant and properly rejected by the trial court. The mortgage clearly and unambiguously conveys the entire 240 acre tract and is signed by defendant both as

trustee and as individual. A witness from the mortgagee testified that if foreclosure had become necessary, the entire 240 acres would have been the subject thereof, not just defendant's and his wife's two-thirds interest. No ambiguity exists.

A trustee's primary obligation is that of loyalty to his beneficiary. No better summary has been set forth than that of Justice Cardozo in *Meinhard v. Salmon* (1928), 249 N.Y. 458, 464, 164 N.E. 545, 546:

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. [Citation.] Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

■ Illinois follows the almost universal rule that a trustee may not purchase trust property from himself nor at his own sale. He may purchase for himself trust property where he does not have any control over the sale. (*Victor v. Hillebrecht* (1950), 405 Ill. 264, 90 N.E.2d 751.) However, under those circumstances it is his duty to communicate fully all the facts to the beneficiary in connection with the transaction. Restatement (Second) of Trusts sec. 170 (1959).

Plaintiff Jane Thomas testified that defendant sent to her and to Jean Britton at about the time of the mortgage transaction forms to sign which authorized defendant to retain the assets of all of them until the youngest had reached age 21. At that time Patrick was 15. She further testified that she knew she had an interest in a farm but knew nothing of the trust instrument which provided that each beneficiary could obtain his share at age 21. The plausible inference is that defendant was attempting to, and did, put the plaintiffs and Patrick in irons until the loan could be consummated. This is scarcely the full disclosure which the law demands of a trustee under those conditions.

Nor does the Federal Land Bank cover itself with glory in this case. If a lender knowingly accepts trust property as security for a personal obligation of a trustee, the lender is bound to know that the encumbrance is in breach of trust and beyond the trustee's authority.

*Union Mutual Life Insurance Co. v. Spaids* (1881), 99 Ill. 249.

■ It is our judgment that defendant was guilty of a clear breach of fiduciary duty. Nevertheless, he argues that a constructive trust was not the proper remedy and that in imposing it, the trial court with the benefit of hindsight was overruling his decision made in 1967. We disagree. As has already been pointed out, if the bank were willing to lend enough for defendant to purchase 60 acres out of 240 by taking an encumbrance on the whole, it follows that it would also be willing to take the same security on a purchase by the trust itself. Defendant's failure to disclose fully to the beneficiaries all of the material facts vitiates any claim that purchase by him in his individual capacity was the proper procedure. Defendant's argument that he should simply be permitted to remove the mortgage is self-serving in the extreme. He paid Rose $30,000 for 60 acres, or $500 per acre; the evidence was that the land is now worth about $2,500 per acre; defendant, through his misconduct, would obtain a windfall of $120,000.

In our opinion defendant has received more equity than he deserves. When a constructive trust is imposed, ordinarily the complainant is required to reimburse the defalcating trustee for the purchase price and expenditures he has made and to recover any profits made in the meanwhile. (*Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, 432 N.E.2d 841; G. Bogert, Trusts & Trustees sec. 472 (2d ed. 1978).) It would therefore follow that in the case at bar the plaintiffs would be entitled to an accounting from 1967, the date of the purchase from Rose, to the date of the imposition of the constructive trust. We believe that such relief would have been eminently proper, but it was not requested in the trial court and in this court plaintiffs ask only that the order of the trial court be affirmed.

In argument to the trial court, it was stated:

"THE COURT: I'm sorry, I am not sure what your damages are. He has had the benefit--

MR. SLATER [Plaintiffs' counsel]: He has had the benefit of the income.

THE COURT: What would you do with reference to that?

MR. SLATER: I haven't alleged an amount that I require. I think we would stand willing now just to have him put them back to the percentage they should have and not worry about how much money he has paid out. I am sure we would have a lot of money coming, but we are willing to waive that under the circumstances."

The order of the circuit court of McLean County is therefore affirmed.

Affirmed.

LONDRIGAN and TRAPP, JJ., concur.