178 Ill. App.3d 545 (1988)
533 N.E.2d 480
SOUTH CHICAGO SAVINGS BANK, Plaintiff-Appellee,
v.
SOUTH CHICAGO SAVINGS BANK, as Trustee, et al., Defendants-Appellants.
No. 87-3521.
Illinois Appellate Court  First District (1st Division).
Opinion filed December 30, 1988.
*546 Robert E. Pincham, Jr., Ltd., & Associates, of Chicago, for appellants.
Schwartz & Freeman, of Chicago (Lora E. Minichillo, Larry R. Chulock, and John T. Duax, of counsel), for appellee.
Judgment affirmed.
*547 JUSTICE QUINLAN delivered the opinion of the court:
In September 1985, South Chicago Savings Bank (Bank) filed an action to foreclose an equitable mortgage against several defendants, including Lara Braxton (Braxton), in the circuit court of Cook County. Braxton filed an answer to the complaint and a counterclaim for damages against the Bank.[1] Subsequently, on the Bank's motion, the court granted summary judgment for the Bank on its complaint, but failed to address the Bank's motion to dismiss Braxton's counterclaim at that time. The Bank again moved to dismiss the counterclaim, and the court then granted that motion. Braxton filed a motion for a rehearing of the Bank's motion to dismiss, and that motion was denied by the court. Now, Braxton appeals the order that dismissed her counterclaim to the court.
The background to this litigation is as follows. In December 1982, Lara Braxton purchased property at 10834 South Perry Avenue, and, in October 1983, she borrowed $13,000 from the Bank, which was evidenced by a note. To secure the payment on the note, Braxton deeded the property into a land trust, trust No. 11-2200, naming the Bank as trustee, and executed a collateral assignment of the beneficial interest in the trust to the Bank. The deed and collateral assignment apparently were intended to constitute an equitable mortgage, and the Bank, as trustee, thus became the owner of the property. Braxton, however, was the sole beneficiary of and had the sole power of direction in the trust.
Apparently unknown to either Braxton or the Bank, there were delinquent taxes on the property for the year 1980, and a tax sale proceeding was therefore initiated on the basis of these taxes. Consequently, in September 1982, the delinquent taxes for the year 1980 were sold at a tax sale to Leslie Barnard (Barnard).[2] When the two-year *548 tax redemption period expired, Barnard filed a petition for a tax deed. The Bank, at that point, purchased the certificate of purchase on the forfeited property from Barnard for $12,000.
Following the purchase, the Bank demanded reimbursement from Braxton for the $12,000 it had paid, but Braxton refused to pay. Because of the tax problems with the property, and Braxton's refusal to reimburse the Bank for the $12,000 it had paid to settle the tax deed case, the Bank declared Braxton's loan to be in default. Consequently, the Bank demanded payment on the balance of the loan, as well as the $12,000. Braxton, however, still refused to pay.
Subsequently, in September 1985, the Bank filed the present complaint to foreclose the equitable mortgage on the property against several defendants, including Braxton. Braxton filed an answer, as well as a counterclaim against the Bank, as noted earlier. In her counterclaim, which consisted of a single count of 10 paragraphs, she stated that at the time of the loan, the Bank had searched the title and "assured" her that the title to the property was clear, and that had she known there were taxes owing, she would not have obtained the loan from the Bank. Further, she asserted that the Bank was a guarantor of the title to the property and that the Bank breached its fiduciary duty to her when it misrepresented the status of the title to the property to her. She also alleged that the Bank interfered with her right to defend against Barnard's petition for a tax deed because, although she intended to contest the petition, the Bank settled with Barnard before she had the opportunity to do so. Finally, she asserted that the Bank had no right to "exercise its assignment of the beneficial interest" until she defaulted on the loan, and that, by defaulting her, the Bank breached its contract with her. In its answer to Braxton's counterclaim, the Bank admitted that it had searched the title to the property at the time the loan was made to Braxton, but substantially denied all the other allegations.
The Bank next moved for summary judgment against Braxton on its own complaint and, as part of the same motion, moved to dismiss Braxton's counterclaim. Braxton did not respond in writing to either motion, and the court granted summary judgment in favor of the Bank without addressing the status of Braxton's counterclaim. Later, the Bank moved for entry of a decree of foreclosure and again moved for a dismissal of Braxton's counterclaim as being insufficient as a matter of law. Braxton did not file any written response to this motion either, but Braxton's counsel did orally argue the motion before the trial court.
In its oral argument on the motion to dismiss, the Bank stated *549 that it had only settled the tax proceeding at the last moment and that it did so to protect its collateral. Moreover, the Bank asserted that Braxton had had an opportunity at the tax deed proceeding to present evidence to the court in her defense but had failed to do so. Braxton, on the other hand, responded orally that she was denied the opportunity to defend against the tax deed proceeding and that evidence existed which showed the property was tax exempt before she took title to it. She did not, however, proffer any evidence to support her contention.
After hearing the arguments, the court entered a decree of foreclosure, stayed execution of that order for 30 days, and dismissed Braxton's counterclaim without comment. The court did not specify whether the dismissal was with or without prejudice, but the order stated that there was no just reason to delay enforcement or appeal. Braxton then filed a motion for rehearing, and, in the same motion, moved to vacate the dismissal of her counterclaim, the decree of foreclosure, and the sheriff's sale, all of which were denied. Braxton has appealed only the dismissal of her counterclaim, but asks this court to vacate both the decree of foreclosure and the order dismissing her counterclaim.
 1 Braxton, in her appeal, contends that her counterclaim was improperly dismissed as being insufficient as a matter of law. Motions to dismiss for failure to state a cause of action as being insufficient as a matter of law are based on the provisions of section 2-615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2-615). A court must not, however, dismiss a cause of action as being insufficient as a matter of law unless it clearly appears that no possible set of facts exists which will entitle the plaintiff to recovery. (Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co. (1986), 114 Ill.2d 278, 286, 499 N.E.2d 1319, 1322.) Under section 2-615, the court must consider all well-pleaded facts as true, and any reasonable inferences drawn from the allegations must necessarily be construed liberally in favor of the complainant, as the motion merely tests the legal sufficiency of the complaint; the motion does not go to the merits of the claim. (See Ill. Rev. Stat. 1987, ch. 110, par. 2-615; Hester, 114 Ill.2d at 286, 499 N.E.2d at 1322.) Hence, the purpose of the motion is to attack defects found on the face of the complaint and examination is, therefore, limited to the four corners of the complaint. (See Inland Real Estate Corp. v. Christoph (1981), 107 Ill. App.3d 183, 437 N.E.2d 658.) The court must, therefore, on a section 2-615 motion to dismiss, examine the complaint and determine whether the allegations of fact and law support the elements of each cause of action.
*550  2 Initially, Braxton contends that the Bank's motion to dismiss was an improper hybrid motion and that this impropriety requires a reversal of the order of dismissal because she was prejudiced by the Bank's failure to specify the nature of its motion. Also, Braxton asserts that her counterclaim sufficiently stated a cause of action based upon theories of breach of fiduciary duty, breach of contract, negligent misrepresentation and constructive fraud.[3]
The Bank argues that the contents of its motion establish that it was brought solely under section 2-615, and that it was not a hybrid motion. (See Ill. Rev. Stat. 1987, ch. 110, par. 2-615.) It asserts that the counterclaim was properly dismissed because there is no cause of action in Illinois which can be based on a theory that a Bank which lends a customer money guarantees that customer that there is a free and clear title as a result of the transaction, and that, in any event, no facts alleged here support such a theory. The Bank further argues that the alleged breach of fiduciary duty claim also fails as a matter of law because Braxton set forth no facts which would establish that a fiduciary relationship existed. The relationship between Braxton and the Bank, it contends, was strictly a debtor-creditor relationship between the Bank and its customer, and, as such, was not a confidential, fiduciary relationship. Finally, the Bank argues that Braxton's claim of interference with her right to defend was also properly dismissed because Braxton alleged no prejudice, and the Bank, furthermore, had a legal right to settle the claim to protect its collateral.
Although Braxton argues that she was prejudiced by the alleged hybrid nature of the motion to dismiss because it was contained in the Bank's motion for summary judgment, the record shows that there was no written or oral objection to the form of the motion at any time in the circuit court, and Braxton only questioned the form of the motion for the first time on appeal before this court. Although we agree that the Bank's motion was poorly drafted, we will not overturn the ruling below solely on that basis unless Braxton establishes that she was, in fact, prejudiced by such a deficiency. See Schaffner v. Chicago & North Western Transportation Co. (1987), 161 Ill. App.3d 742, 515 N.E.2d 298, appeal allowed (1988), 118 Ill.2d 551, 520 N.E.2d 393.
The record here reflects that Braxton's counsel filed no written response to either motion and that there were separate hearings on different dates for the motion for summary judgment and the motion *551 to dismiss, respectively. It is also clear that Braxton's counsel understood the motion to be a section 2-615 motion, because in oral argument before the trial court he defended the legal sufficiency of the counterclaim. Accordingly, we find no merit in Braxton's contention that she was prejudiced by any alleged hybrid nature of the motion.
Additionally, an examination of the substance of the motion to dismiss, and the counterclaim on which it is based, shows that the Bank was not the only party guilty of sloppy drafting. Braxton's counterclaim was also poorly drafted and she, herself, has, at different times, taken different positions on how many causes of action were asserted and the nature of the causes of action allegedly asserted.[4] Braxton now claims on appeal that there were four separate causes of action contained within the single-count counterclaim: breach of fiduciary duty, breach of contract, negligent misrepresentation, and constructive fraud. None of these, however, are set forth in separate counts, as required by section 2-603 of the Code of Civil Procedure, and all the asserted allegations of the different alleged causes of action are contained within the same 10 paragraphs. (See Ill. Rev. Stat. 1987, ch. 110, par. 2-603.) Furthermore, Braxton's argument in her brief on appeal addresses all of the theories together, interweaving assertions of theories with assertions of facts. To the contrary, the Bank in its argument on appeal contends that there are only three causes of action alleged: breach of fiduciary duty, breach of the Bank's duty as guarantor of a clear title, and interference with Braxton's right to defend in the tax deed proceeding.
Procedural problems such as those presented here are precisely the type of problems that sections 2-603(a) and (b) of the Code attempt to abrogate by requiring that separate causes of action be contained in separate counts. (See Ill. Rev. Stat. 1987, ch. 110, par. 2-603.) The parties both agree, however, that the counterclaim at least sets forth a claim for breach of fiduciary duty and that the Bank moved to dismiss the counterclaim on at least that theory on the basis that the complaint was insufficient as a matter of law and that Braxton responded to that argument. Hence, we will consider the legal sufficiency of the counterclaim based on the claim for breach of fiduciary duty.
*552  3 Generally, a fiduciary relationship may be presumed from the very relationship of the parties, such as that of a trustee and beneficiary. (Paskas v. Illini Federal Savings & Loan Association (1984), 109 Ill. App.3d 24, 30, 440 N.E.2d 194, 198.) However, the relationship between the parties to a land trust, although labelled as trustee and beneficiary, is not in the nature of a typical trust or fiduciary relationship. Basically, a land trust is a vehicle whereby title to the real property is treated as personalty, thus making the transfer of title to the property much easier. (See generally Haswell & Levine, The Illinois Land Trust: A Fictional Best Seller, 33 De Paul L. Rev. 277 (1984).) The trustee, therefore, is merely a nominee to hold title, and all other duties are under the direction and control of the beneficiary to the land trust. Although our supreme court had never addressed the specific rights and duties of the parties to a land trust agreement prior to 1982, the long-standing practice, codified in 1982 by our legislature, allowed banks to act as both land trustee and secured creditor for the same trust beneficiary, a practice which, in a normal trust arrangement, would constitute a breach of fiduciary duty. (See Ill. Rev. Stat. 1987, ch. 148, par. 81(b); Sanelli v. Glenview State Bank (1985), 108 Ill.2d 1, 483 N.E.2d 226.) In 1982, the specific issue concerning whether a land trustee owed fiduciary duties to the beneficiary of a land trust was presented to our supreme court in Home Federal Savings & Loan Association v. Zarkin (1982), 89 Ill.2d 232, 432 N.E.2d 841. The Zarkin case involved the issue of whether a land trustee, who was also a secured creditor of the beneficiary of the land trust secured by the trust property, owed a fiduciary duty to the beneficiary such that it would be a breach of that fiduciary duty for the land trustee (a bank) to repurchase the trust property at a sale on foreclosure following the beneficiary's default on the loan. The Illinois Supreme Court in Zarkin held, contrary to long-standing practice, that land trustees in Illinois were subject to the same fiduciary duties as a regular trustee and that the land trustee/secured creditor's repurchase of the trust property after foreclosure was a breach of the trustee's fiduciary duty to the beneficiary. Zarkin, 89 Ill.2d 232, 432 N.E.2d 841; see also Sanelli, 108 Ill.2d 1, 483 N.E.2d 226.
Immediately after the Zarkin decision came down, however, our legislature enacted "An Act in relation to land trusts * * *" (Land Trust Act or Act), which effectively overturned the basis of the Zarkin decision. (Ill. Rev. Stat. 1987, ch. 148, par. 81 et seq.; see also Sanelli, 108 Ill.2d 1, 483 N.E.2d 226.) The Act, in essence, accepted the long-standing practices that had been followed prior to Zarkin and specifically set forth special rights and duties which existed between parties *553 to a land trust, rights and duties which were not the same as those imposed in a regular trust agreement. The Act expressly recognized that because beneficiaries to a land trust retain the power of direction and control over the trust property, beneficiaries will frequently select a financial institution as trustee "simply because that institution will be asked by the beneficiaries to extend credit to the trust or to the beneficiaries secured by their interests in the trust." (Ill. Rev. Stat. 1987, ch. 148, par. 81(a)(4).) The Act also specifically addressed the issue of breach of fiduciary duty and provided that it was not a breach of fiduciary duty for a party, i.e., a bank, to act as both a land trustee and a secured creditor for the same trust beneficiary.
In 1985, our supreme court, in Sanelli v. Glenview State Bank, was presented again with the specific issue of whether a land trustee owed beneficiaries of land trusts fiduciary duties similar to those owed to beneficiaries in an ordinary trust. (Sanelli, 108 Ill.2d 1, 483 N.E.2d 226.) In Sanelli, the court found that the 1982 Act was intended to be retroactively applied to land trusts. The court found that prior to Zarkin there had been no judicial determination that transactions such as the ones presented in both Sanelli and Zarkin were improper, and hence, the plaintiff who had alleged a breach of fiduciary duty could have had, at best, only a minimal expectation of any type of Zarkin contractual obligation. Accordingly, the court in Sanelli held that the legislature had not agreed with the Zarkin decision and, by the Act, the legislature intended to clearly distinguish land trusts from other types of trusts, thus codifying the pre-Zarkin, long-standing practices concerning land trusts. (Sanelli, 108 Ill.2d 1, 483 N.E.2d 226; see also Zarkin, 89 Ill.2d 232, 432 N.E.2d 841.) Therefore, the Sanelli court ruled that the intent of the legislature should properly be given retroactive effect.
The facts presented in the Sanelli case itself are analogous to the facts set forth in the counterclaim here. (Sanelli, 108 Ill.2d 1, 483 N.E.2d 226.) In Sanelli, the beneficiaries of a land trust sued the land trustee for breach of fiduciary duty when, after the beneficiary defaulted on its loan with the land trustee, the land trustee purchased the trust property for its own benefit at a public sheriff's sale. Applying the Act, the Sanelli court found that no cause of action for breach of fiduciary duty existed. We have no difficulty in finding that Sanelli is controlling here and hold that no cause of action existed because of the Bank's settlement of the tax deed claim and its subsequent purchase of the property. Clearly the Bank here was also chosen as a trustee simply because Braxton requested it to extend credit to her in the amount of $13,000, and this certainly did not give rise to a relationship *554 of trust and confidence as anticipated in an ordinary trust agreement.
Finally, we note that although this court in Slovick v. All American Bank (1987), 163 Ill. App.3d 741, 516 N.E.2d 947, recently stated that a land trustee owes certain fiduciary duties to its beneficiaries under the general principles of Zarkin, and that the Act did not abolish all of the fiduciary duties owing to beneficiaries, we find that that interpretation must be narrowly construed in light of the express mandate of our legislature and the recent interpretation of the Act by our supreme court in Sanelli. (See Sanelli, 108 Ill.2d 1, 483 N.E.2d 226; Zarkin, 89 Ill.2d 232, 432 N.E.2d 841.) Accordingly, we hold that under the facts asserted here, Braxton failed, as a matter of law, to state a cause of action for breach of fiduciary duty.
 4 As to the remaining causes of action claimed to be alleged, we find that they were properly dismissed by the trial court. An examination of the counterclaim and the theories which Braxton claims she has alleged shows clearly that Braxton has only alleged conclusions, and not facts sufficient to support the elements of any of her other alleged causes of action. For example, although she claims a breach of contract, she never refers to any portion of the contract which was allegedly breached by the Bank. Further, Braxton merely asserted that the Bank "assured" her that title to the property was clear, without any specific factual support for her assertions. She also claimed that the Bank violated various other "rights" owed to her, but these statements are mere conclusions, without proper factual support and do not reasonably inform the Bank of the claim against which it must defend, as required by section 2-603 of the Code of Civil Procedure. (See Ill. Rev. Stat. 1987, ch. 110, par. 2-603.) It is not enough for a party to allege legal conclusions, but rather, a party must allege facts to support the elements of the cause of action. (See Laycock, Dispositive Pre-Trial Motions in Illinois  Sections 45, 48 & 57 of the Civil Practice Act, 9 Loy. U. Chi. L.J. 823 (1978).) We therefore find that the trial court properly dismissed the causes of action Braxton claims she may have asserted as being insufficient as a matter of law.
For all of the reasons set forth above, we find that the trial court's decision dismissing Braxton's counterclaim was proper and affirm the judgment of the circuit court of Cook County.
Judgment affirmed.
BUCKLEY and O'CONNOR, JJ., concur.
NOTES
[1] Braxton also filed a counterclaim against Harry "Bus" Yourell, the registrar of titles in Cook County, Illinois, but that counterclaim is not involved in this appeal.
[2] Certain background information helps to explain the nature of the problems between the parties. While this information was not properly admitted in the record on appeal as evidence, and is not considered in our decision, it is helpful to understand the factual setting of this litigation.

When Braxton apparently purchased the property in 1982 from the Archdiocese of Chicago, she did so by way of a warranty deed. Hence, Braxton apparently assumed that the property had been tax exempt. At the time Braxton applied to South Chicago for a loan of $13,000, the Bank had a title search done and that search apparently revealed no encumbrances, i.e., no delinquent taxes on the property. Accordingly, it would further appear that there was an error somewhere in the title search process, which, allegedly, no one discovered until Barnard's tax deed proceeding on the property had begun.
[3] We further note that although Braxton requested this court to vacate the decree of foreclosure, she makes no written or oral argument on appeal concerning the granting of the decree of foreclosure, and therefore, that issue is waived.
[4] Braxton argued before the trial court that the counterclaim only asserted theories for breach of contract and breach of fiduciary duty. However, Braxton now argues in her brief on appeal that the counterclaim asserted theories of breach of fiduciary duty, breach of implied or express oral contracts, negligent misrepresentation and constructive fraud. Nevertheless, in oral argument on appeal, Braxton focused only on the breach of fiduciary duty theory.