(No. 62460

CHARLES HESTER ENTERPRISES, INC., *et al.*, Appellants, v. ILLINOIS FOUNDERS INSURANCE COMPANY *et al.*, Appellees.

*Opinion filed September 17, 1986.—Rehearing denied December 1, 1986.*

CLARK, C.J., took no part.

B. Tad Armstrong, of Edwardsville, and Thomas A. Hill, of Mateyka, Hill & Hill, P.C., of Highland, for appellants.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and Robert J. Slobig, of counsel), for appellee Illinois Founders Insurance Company.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller, of counsel), for appellee Certain Underwriters of Lloyds *et al.*

Donovan, Hatch & Constance, of Belleville (Michael B. Constance, of counsel), for appellee Progressive Casualty Company *et al.*

Dunham, Boman & Leskera, of East St. Louis

(Howard F. Boman and John W. Leskera, of counsel), for appellee Western Casualty and Surety Company.

Robert G. Heckenkamp, of Springfield, for appellee First Financial Insurance Company.

JUSTICE MORAN delivered the opinion of the court:

Plaintiffs, purchasers of dramshop liability insurance, brought this class action suit in the circuit court of Madison County against eight insurance companies (defendants). Plaintiffs essentially allege that defendants sold dramshop liability insurance which provided coverage in excess of the amount that plaintiffs could become liable for under section 14 of article VI (now section 6—21) of the Liquor Control Act of 1934 (Dramshop Act) (Ill. Rev. Stat. 1983, ch. 43, par. 135), and that defendants collected premiums for the excess coverage.

In their third amended complaint, plaintiffs seek recovery from each of the eight defendants under four separate theories: (1) that defendants committed fraud in selling coverage in excess of the maximum statutory limits of liability; (2) that defendants violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262); (3) that a constructive trust should be imposed on the premiums paid for coverage in excess of the statutory limits of liability because defendants were unjustly enriched by collecting premiums for coverage beyond their liability exposure; and (4) that defendants assumed no risk in providing coverage beyond the statutory limit, and as a result, defendants did not give any "consideration" for the premiums paid by plaintiffs for such coverage. In addition to requesting a constructive trust, plaintiffs seek actual and punitive damages, interest, attorney fees, court costs, and an injunction against future sales by defendants of dramshop insurance coverage in excess of

the limits set forth in the Dramshop Act.

Defendants moved to strike and dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), contending that none of the allegations in the various counts are sufficient to state a cause of action. The trial court granted defendants' motion and dismissed the entire complaint with prejudice. The trial court also denied plaintiffs' motion for class certification. The appellate court affirmed (137 Ill. App. 3d 84), and we granted plaintiffs leave to appeal (94 Ill. 2d R. 315).

At issue is whether the trial court erred in dismissing plaintiffs' third amended complaint with prejudice for failure to state a cause of action. In addition, we are asked to consider whether the trial court erred in denying plaintiffs' motion for class certification. We address those issues relating to the sufficiency of the complaint first, since we need not consider the class certification question if we find that the complaint does not state a cause of action. *Schlessinger v. Olsen* (1981), 86 Ill. 2d 314, 318.

In order to properly judge the sufficiency of plaintiffs' third amended complaint, it is necessary to present a more detailed summary of its allegations. Plaintiffs purchased dramshop liability insurance from one or more of the defendants in various amounts and at various times between October 18, 1970, and February 23, 1981. The policies sold by defendants insured plaintiffs against liability imposed by the Dramshop Act and "all laws amendatory thereof" up to the amount of insurance coverage purchased by the individual plaintiffs. The insurance policies, which are attached to the complaint as exhibits, contain four separate liability limits: bodily injury to one person; bodily injuries for one occurrence; property damage; and loss of means of support. Plaintiffs' complaint only concerns the insurance coverage provided

for "bodily injury to one person." During the relevant time period, the Dramshop Act limited the liability it imposes for bodily injury to one person to $15,000. (This limit was increased to $30,000 effective September 12, 1985 (see Ill. Rev. Stat. 1985, ch. 43, par. 135).) The gravamen of plaintiffs' complaint is that they purchased dramshop insurance from defendants which insured against liability for personal injury to one person in amounts greater than $15,000, even though the statute limited liability to that amount. They further allege that defendants charged an additional premium for the excess coverage.

Eight counts of plaintiffs' 32-count complaint allege that defendants committed fraud by selling plaintiffs, and others similarly situated, dramshop coverage in excess of the $15,000 statutory limit for personal injury to one person. Plaintiffs allege that defendants, through their agents, "knowingly marketed, sold and accepted premiums for dram shop insurance coverage in excess of the statutory limit *** for injury to one person knowing that, thereby, they had assumed no risk in excess of the aforesaid statutory limit." They further allege that each defendant, "knowingly and with the intent to deceive," deprived plaintiffs of "excessive premiums" and that plaintiffs "justifiably relied" to their detriment upon defendants' "representations *** concerning said excessive coverage." Plaintiffs request punitive damages and an injunction against future sales of dramshop insurance coverage "in excess of the statutory limits *** for injury to one person."

Plaintiffs also seek a refund of premiums based on allegations in eight counts of the complaint that defendants did not provide "consideration" for premiums paid by plaintiffs for coverage in excess of the statutory limit of liability for injury to one person. They allege that the "portion of [each] insurance contract which purports to

insure for liability in excess of the statutory limit fails for lack of consideration" because defendants, in providing "coverages purporting to be in excess of the statutory limit," assumed "no risk for said excessive coverages."

Additionally, plaintiffs allege that defendants violated section 2 of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 262). They complain that the "acceptance of premiums for excessive coverage without assuming any insurable risk beyond the statutory limit constitutes fraud, deception, false pretense, false promise and misrepresentation" by defendants. It is further alleged that each defendant "did not in its policy disclose the statutory limit of liability thereby concealing, suppressing or omitting a material fact" from plaintiffs, intending plaintiffs to rely on the concealment, suppression or omission. Plaintiffs pray for a partial refund of premiums plus interest, injunctive relief, and punitive damages.

Finally, in eight counts, plaintiffs seek the imposition of a constructive trust on premiums paid for coverage in excess of the $15,000 statutory limit for bodily injury. In support of their request for a constructive trust, they allege that defendants sold them policies of insurance for coverage in excess of the $15,000 limit for bodily injury to one person; that defendants collected premiums for the excess coverage; that defendants assumed no risk beyond the statutory limit of $15,000; and that plaintiffs are "entitled to restitution" for all premiums "for coverage purporting to be in excess of the statutory limit."

Since all four theories of recovery hinge on the allegation that defendant sold valueless insurance coverage, it is appropriate to consider first those counts alleging a "lack of consideration." In those counts, plaintiffs allege that defendants "assumed no risk" in providing coverage in excess of the statutory limit of liability, and that,

accordingly, defendants did not give any consideration for premiums paid by plaintiffs for any coverage over the $15,000 limit. Defendants maintain that these counts fail to state a cause of action. They argue that the insurance policies themselves, which were attached to the complaint as exhibits, show that consideration was given for the premiums paid for any coverage in excess of $15,000. Defendants note that the insurance policies provide that defendants would indemnify the plaintiff insureds for liability under the Dramshop Act "in force February 1, 1934, and all laws amendatory thereof." They construe the phrase "and all laws amendatory thereof" as a promise to insure the plaintiff insureds for the amounts of "excess" coverage purchased in the event that the General Assembly increased the limits of liability under the statute. Defendants contend, and the appellate court held, that a promise to insure against possible increases in statutory liability, referred to by defendants as "sleep safe" insurance, constituted consideration for the premiums charged for such coverage.

A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187; *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 133.) Additionally, well-pleaded facts must be taken as true for judging the sufficiency of the complaint (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 545), including facts contained in exhibits attached to the complaint (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284; *Fowley v. Braden* (1954), 4 Ill. 2d 355, 358-59).

Even though we judge the sufficiency of the counts alleging a "lack of consideration" by the liberal standards set forth above, we agree with defendants and the appellate court that the counts do not state a cause of

action. The complaint alleges that defendants assumed no risk in providing coverage in excess of the maximum statutory limit, while the insurance policies themselves, which were attached to the complaint as exhibits, state otherwise. The policies insured plaintiffs for liability imposed by the Dramshop Act "and all laws amendatory thereof" and, thus, provided additional coverage for those plaintiffs or other insureds who purchased the additional coverage in the event that the statutory limits of liability were increased by the General Assembly. Where an exhibit is the instrument being sued upon, it controls over the facts alleged in the complaint. *Fowley v. Braden* (1954), 4 Ill. 2d 355, 359-60.

Plaintiffs do not dispute the fact that defendants were obligated under the policies to insure against possible increases in statutory liability to the extent of any "excess" coverage purchased by an individual insured. Instead, they contend that any possible increase in statutory liability is "too unpredictable" and that any promise to insure against such a risk is "illusory." We disagree. We construe defendants' promise to insure against possible increases in liability under the Dramshop Act as a conditional promise. It is a widely accepted rule of contract law that consideration is not insufficient merely because it is conditional, even though the controlling event may never occur. (See *Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 970; 1 Williston, Contracts sec. 112, at 444 (3d ed. 1957).) As Professor Corbin explains in his well-known treatise on contract law:

> "A promise is not made insufficient as a consideration for a return promise by the fact that it is conditional, even though the condition is one that is purely fortuitous and may never happen at all. A promise that is subject to such a fortuitous condition is called an 'aleatory' promise." (1 Corbin, Contracts sec. 148, at 645-46 (1963).)

In a later passage Professor Corbin adds:

"If a seeming promise is made conditional upon an event that can not occur at all, as the promisor knows, no real promise has been made. This is one form of the so-called 'illusory promise'; it is not a sufficient consideration for another promise. If, on the other hand, the promise is conditional upon an event that may possibly occur, it is not illusory; and it is not made an insufficient consideration by the fact that the probability that the event will occur is very slight." (1 Corbin, Contracts sec. 148, at 651 (1963).)

(See also Restatement (Second) of Contracts secs. 76, 77 (1981).) Thus, even if we assume that the probability of an increase in the dramshop liability limits during the relevant policy periods was very slight, the possibility that the limits could have been increased by the General Assembly at any time saved defendants' promises from being illusory. Accordingly, we hold that those counts attempting to allege a "lack of consideration" were properly dismissed for failure to state a cause of action.

Eight counts of plaintiffs' complaint seek recovery from defendants on a fraudulent misrepresentation theory. The following elements must be pleaded in order to allege a cause of action for fraudulent misrepresentation: (1) false statement of material fact; (2) known or believed to be false by the party making it; (3) made to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 333.) In addition, the reliance upon the misrepresentation must have been justified, *i.e.*, the other party had a right to rely upon the statement. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286; *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 94.

The allegations of fraud against each defendant are exactly the same and arise solely out of the sale of dram-

shop insurance coverage for bodily injury in excess of the $15,000 statutory limit of liability. The allegations of fraud are contained in three paragraphs of each of the eight counts, and allege:

"9. [Each defendant], through its authorized agents, knowingly marketed, sold and accepted premiums for dram shop insurance coverage in excess of the statutory limit provided in Chapter 43 Section 135 for injury to one person knowing that, thereby, they had assumed no risk in excess of the aforesaid statutory limit.

10. [Each defendant], through its authorized agents, knowingly and with the intent to deceive, has deprived the Plaintiffs' Class of these excessive premiums and thereby profited on the loss to the Plaintiffs' Class.

11. The plaintiff has justifiably relied to his detriment upon the defendants' representations to the plaintiff concerning said excessive coverage."

It is readily apparent that plaintiffs have not alleged that defendants made a false statement of material fact—an element which must be alleged in order to state a cause of action for fraud. Plaintiffs contend, however, that their allegations are sufficient to state a cause of action for fraud and cite for authority this court's decision in *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243.

In *Glazewski* the plaintiffs purchased underinsured-motorist coverage from the defendant insurance companies with limits of $15,000 per person and $30,000 per occurrence (15/30). Plaintiffs brought an action for fraud, alleging that they could never collect on the 15/30 underinsured-motorist coverage following an accident in Illinois with an Illinois resident because of the manner in which "underinsured" was then defined by statute. They also alleged that they could never collect on the insurance in any other circumstance, and that, therefore, the coverage had no value. In holding that plaintiffs had stated a cause of action for fraud, the court in *Glazewski*

noted that a "representation may be made by words, or by actions or other conduct amounting to a statement of fact." (108 Ill. 2d 243, 250.) The court concluded that the sale of valueless insurance coverage constituted a false statement of material fact, explaining that "the issuance of coverage by an insurance company in return for a premium is a tacit representation to the consumer that the coverage has value." (108 Ill. 2d 243, 250.) Here too, plaintiffs argue that the sale of insurance coverage in excess of the statutory limit of liability constitutes a misrepresentation that the excess coverage had value.

We do not think that the allegations in the complaint are sufficient to state a cause of action for fraud under the reasoning stated in *Glazewski*. The insurance policies in the present case provided that defendants would insure the plaintiff insureds for liability imposed by the Dramshop Act "and all laws amendatory thereof" and obligated defendants to insure against possible legislative action increasing dramshop liability limits to the extent of any "excess" coverage purchased. Thus, unlike the underinsured-motorist coverage sold in *Glazewski*, the so-called "sleep safe" coverage sold by defendants had some value. Furthermore, the complaint is devoid of any allegations of other representations or conduct which would constitute fraud. Plaintiffs do not allege that defendants misrepresented the nature of the coverage provided by the insurance policies, or that defendants misrepresented the limits of liability under the Dramshop Act. Nor is it alleged that defendants induced plaintiffs to purchase dramshop liability insurance in any particular amounts. Therefore, the fraud counts were properly dismissed for failure to state a cause of action.

Next, we consider whether plaintiffs have stated a cause of action pursuant to section 2 of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1983, ch. 121½, par. 262).

Section 2 provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." (Ill. Rev. Stat. 1983, ch. 121½, par. 262.)

Under section 10 violators of the Consumer Fraud Act are liable to the persons injured thereby for "actual damages or any other relief which the court deems proper." Ill. Rev. Stat. 1983, ch. 121½, par. 270a(a).

Plaintiffs allege that the "acceptance of premiums for excessive coverage without assuming any insurable risk beyond the statutory limit constitutes fraud, deception, false pretense, false promise and misrepresentation" by defendants. They also allege that each defendant "did not in its policy disclose the statutory limit of liability thereby concealing, suppressing or omitting a material fact" from plaintiffs, intending them to rely on the concealment, suppression or omission.

The above allegations are insufficient to state a cause of action under section 2 of the Consumer Fraud Act. We have already determined that the "sleep safe" insurance sold by defendants had some value and rejected on that basis the argument that the sale of such insurance was fraudulent. Here too, plaintiffs make essentially the same argument as they did in the fraud counts, alleging

that the sale of the "sleep safe" insurance constitutes "fraud, deception, false pretense, false promise and misrepresentation" in violation of section 2 (Ill. Rev. Stat. 1983, ch. 121½, par. 262). As such, we think that these allegations are insufficient to state a cause of action under section 2 of the Consumer Fraud Act. Moreover, we do not believe that defendants' failure to disclose the statutory liability limits in their insurance policies constituted "the concealment, suppression or omission of any material fact" in violation of the Act. (Ill. Rev. Stat. 1983, ch. 121½, par. 262.) We agree with plaintiffs that the statutory liability limits are an important consideration in deciding how much dramshop insurance to purchase, and consequently, the liability limits must be deemed to be a "material fact" within the meaning of the statute. However, we cannot agree that the nondisclosure of the dramshop liability limits in the insurance policies was the type of "concealment, suppression or omission" intended by the drafters of the statute. Although the liability limits were not stated in the policies, the policies unambiguously provided that plaintiffs were being insured for liability arising under the Dramshop Act. The limits of liability are clearly set forth in the Dramshop Act, and both plaintiffs and defendants had an equal opportunity to know those liability limits. Statutes such as the Dramshop Act are of public record, and all persons are presumed to know their contents. As the appellate court observed, the defendants "could hardly be accused of concealing that which was spread abroad in the statute." (137 Ill. App. 3d 84, 99.) We hold, therefore, that plaintiffs have not stated a cause of action under section 2 of the Consumer Fraud Act.

The final eight counts of plaintiffs' complaint seek the imposition of a constructive trust on the premiums paid for coverage in excess of the statutory limits of liability for bodily injury to one person. Plaintiffs allege that

defendants sold them dramshop insurance coverage in excess of the $15,000 limit for bodily injury to one person; that defendants collected premiums for the excess coverage; that defendants assumed no risk beyond the statutory limit of $15,000; and that plaintiffs are "entitled to restitution" for all premiums "for coverage purporting to be in excess of the statutory limit."

A constructive trust is an equitable remedy that may be imposed to redress unjust enrichment caused by a party's wrongful conduct. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328.) Where property has been acquired wrongfully, the party in possession may be declared to be a constructive trustee of the property if it would be unjust for that party to retain it. The constructive trust arises by operation of law, and the constructive trustee's sole duty is to transfer title and possession to the beneficiary. (G.C. and G.T. Bogert, Trusts sec. 77, at 287-90 (1973).) Some form of wrongful or unconscionable conduct is a prerequisite to the imposition of a constructive trust. As the court in *Ray v. Winter* (1977), 67 Ill. 2d 296, explained, "Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and subsequent abuse of such relationship." (67 Ill. 2d 296, 303. See also *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 328; *Cunningham v. Cunningham* (1960), 20 Ill. 2d 500, 504; *Mortell v. Beckman* (1959), 16 Ill. 2d 209, 212.) Similarly, duress, coercion and mistake have been grounds for imposing a constructive trust. See, *e.g., Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532 (payment of taxes under mistaken belief that they were due). See generally G.C. and G.T. Bogert, Trusts sec. 80, at 293-94 (1973); D. Dobbs, Remedies 246 (1982).

Our analysis of the fraud counts of plaintiffs' com-

plaint negates fraud as the basis for imposing a constructive trust on the premiums paid for the "sleep safe" coverage, and plaintiffs have not alleged any other wrongful or unconscionable conduct which would justify the remedy. There are no allegations of duress, coercion or breach of fiduciary duty in the complaint. Plaintiffs allege only that defendants "sold *** excessive coverage while assuming no risks beyond the statutory limits *** for bodily injury to one person." As such, they allege that defendants should be held to be constructive trustees of all premiums paid for the excess coverage. However, we have already determined that defendants assumed some risk in providing the "sleep safe" coverage since they would be liable for the excess limits in the event the limits of liability were increased by the legislature, and plaintiffs' allegations do not justify the creation of a constructive trust.

In this court plaintiffs make the belated argument that they purchased the "excess" coverage under the mistaken belief that they could be liable for the limits of liability stated in the insurance policies because they were unaware of the true liability limits set forth in the Dramshop Act. Relying on this court's opinion in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, plaintiffs argue that their mistaken belief about the true liability limits, coupled with the fact that they purchased coverage in excess of the statutory liability limits, is sufficient to justify a constructive trust on the premiums paid for the excess coverage. However, we need not consider this argument, because no allegations of mistake are made in the complaint. Indeed, the complaint contains no allegation that plaintiffs were unaware of the limits of liability limits set forth in the statute, and as such, it can hardly be argued that the additional coverage was purchased by mistake.

Because we find that the complaint was properly dis-

missed for failure to state a cause of action, we need not address plaintiffs' other arguments, including the contention that the trial court erred in refusing to grant plaintiffs' motion for class certification.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE CLARK took no part in the consideration or decision of this case.