BRENT SMITH, Plaintiff-Appellant, v. NEIL KURTZMAN *et al.,* Defendants-Appellees.

First District (3rd Division) No. 87—1938

Opinion filed November 16, 1988.

Grief, Bus & Blacklidge, of West Chicago (Dalton P. Grief, of counsel), for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Helen Marie Ryan, and Richard G. Howser, of counsel), for appellees.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Brent Smith, appeals from an order of the circuit court of Cook County, Illinois, granting summary judgment to defendants Neil Kurtzman, M.D., and Olga Jonasson, M.D., on count III of plaintiff's fifth amended complaint at law. We affirm.

In a previous appeal, *Smith v. Kurtzman* (1982), 106 Ill. App. 3d 712, 436 N.E.2d 1, we reversed an order of the circuit court which denied plaintiff leave to file count III of the fifth amended complaint at law.[1] We observed that in count III plaintiff alleged his reliance on affirmative, intentional misrepresentations by defendants Kurtzman and Jonasson occurring subsequent to certain acts of "malpractice" committed by the defendants in connection with a renal transplant operation performed upon plaintiff. Plaintiff further alleged that the misrepresentations caused him to forego a proper cure of his condition. We held that count III stated a cause of action for the tort of intentional misrepresentation and remanded the cause for further proceedings.

Upon remand, defendants Kurtzman and Jonasson took plaintiff's

---

[1]We held that all other counts of the fifth amended complaint were time barred and we affirmed the circuit court's dismissal of those counts.

deposition. In the deposition, plaintiff testified that he first saw defendants Kurtzman and Jonasson, both doctors at University of Illinois Hospital, in 1973. Plaintiff was having chronic problems with renal failure and with his urinary tract. Defendants Kurtzman and Jonasson treated plaintiff on a "team" basis. They supervised plaintiff's treatment. However, plaintiff was seen by many residents and other doctors in the field of nephrology at University of Illinois Hospital. Plaintiff discussed the possibility of a renal transplant with defendants Kurtzman and Jonasson. They informed him of the risks involved in the transplant and of the possibility of rejection of the transplant by his body. Defendants performed the renal transplant operation on August 13, 1974. The transplanted kidney worked well the first two weeks following the operation. Thereafter, plaintiff experienced problems with the kidney. One of his doctors informed him that his body was rejecting the kidney. The doctors did not indicate to him that infection played any role in the rejection. Defendants Kurtzman and Jonasson subsequently removed the transplanted kidney.

Plaintiff testified that he was discharged from the hospital shortly after October 21, 1974. At the time of his discharge, he was told by defendant Kurtzman or defendant Jonasson that he would have to get healthy before a second attempt at a transplant could be made. Defendants Kurtzman and Jonasson also told him he should have a transplant from a cadaver because his body would be less likely to reject the transplant and because there were no readily available live donors. The choice as to whether a second transplant should be performed was left to him. Plaintiff admitted that neither defendant Kurtzman nor Jonasson told him that he could not have a second transplant or that there was a greater chance of rejection of a second transplant because of rejection of the first transplant.

Plaintiff was admitted to University of Illinois Hospital five times between November 1974 and September 1975. He testified that he could not recall any specific conversations with defendant Kurtzman or Jonasson during these admissions regarding the reasons for the failure of the transplant. Nor could he recall any specific conversations with the defendants regarding a second transplant. During that time, he was concerned with his general health rather than with a second transplant.

Plaintiff testified that he left the care of defendants Kurtzman and Jonasson in late 1975 or early 1976. He transferred to a dialysis center where he was under the care of Dr. Paul Balter, a nephrologist. In the summer of 1976, he consulted Dr. Geis, a surgeon at Loyola University Hospital (Loyola), and Dr. Hano, a nephrologist at

Loyola. Dr. Geis recommended a second transplant using a kidney from plaintiff's grandmother. Dr. Geis also asked plaintiff to talk with defendant Jonasson regarding plaintiff's reasons for changing hospitals. Plaintiff testified that he then spoke with defendant Jonasson regarding a transplant from plaintiff's grandmother. Plaintiff stated that defendant Jonasson told him that his "grandmother's kidney would reject just like [his] mother's did, and that we shouldn't do it." Plaintiff did not ask defendant Jonasson the basis for her conclusion.

Plaintiff testified that he then went home and discussed the situation with his mother. His mother called Dr. Olaf Anderson, a doctor on the team which performed the first renal transplant. His mother later related to him her conversation with Dr. Anderson. She said that Dr. Anderson told her that infection, not rejection, caused the first renal transplant to fail and that plaintiff should proceed with the second transplant. Plaintiff did not speak with Dr. Anderson directly. Plaintiff also admitted that no doctor at Loyola has ever told him that infection, rather than rejection, caused the failure of the first transplant. Further, no doctor has ever told him that the first transplant failed because of infection.

Plaintiff was admitted to Loyola in October 1976, for a workup preparatory to the transplant. The actual transplant operation took place in January 1977. He had minor bouts of rejection within six weeks of the transplant. Thereafter, his medical condition improved. Plaintiff testified that until his consultation with Dr. Geis in the summer of 1976, he had not considered having a second transplant because he was trying to regain his health. He would have waited a year or so to have a second transplant whether the transplant was from a cadaver or from his grandmother.

Plaintiff visits Dr. Williams in Phoenix, Arizona, periodically to determine whether the transplanted kidney is functioning adequately. At the time of his last visit to the doctor, plaintiff was told that his kidney was functioning normally. Plaintiff has not had any indications from any doctors that his kidney is not working normally.

On December 9, 1986, defendants Kurtzman and Jonasson filed a motion for summary judgment on count III of the fifth amended complaint. Both defendants submitted affidavits in support of the motion for summary judgment. In his affidavit, defendant Kurtzman testified that the removal of the transplanted kidney was caused by rejection. Infection played no role in the rejection of the transplanted kidney. Defendant Kurtzman further testified that he did not advise plaintiff that plaintiff was not a candidate for a second kidney transplant. In her affidavit, defendant Jonasson testified that plaintiff was advised

of the risk of rejection before the first kidney transplant was undertaken. Removal of the transplanted kidney was necessitated by rejection. Although plaintiff did develop an infection at the operative site because of the necessary use of corticosteroids in conjunction with the transplant procedures and because of invasive operative procedures, this infection was not the cause of the kidney's rejection. Infection played no role in the rejection of the kidney. Defendant Jonasson further testified that after the rejection of the first kidney transplant she strongly recommended to plaintiff that a second transplant procedure be performed in the future. She also informed plaintiff that a cadaver donor kidney could be used in the second transplant. In 1976, she was of the opinion that because of the risk of kidney transplant failure and the risks to the health of plaintiff's grandmother, a transplant from plaintiff's grandmother was not justified. Plaintiff's grandmother was beyond the recommended age for donors. Defendant Jonasson testified that at no time did she ever advise plaintiff that he was not a candidate for a second transplant procedure.

Defendants Kurtzman and Jonasson also submitted the affidavit of James Wolf, M.D., in support of the motion for summary judgment. Dr. Wolf testified that he is chairman of the division of transplantation at Northwestern Memorial Hospital and Northwestern University Medical School. He has been engaged in the practice of kidney transplantations since 1963. He reviewed the medical records of plaintiff at University of Illinois Hospital. Those records showed that on August 24, 1974, plaintiff developed fever and hematuria with a rising serum creatinine, findings consistent with acute rejection. The rejection did not reverse by the usual and accepted course of therapy, which was utilized by the doctors. An arteriogram failed to demonstrate any other abnormalities. By September 16, 1974, the doctors correctly decided that the rejection was irreversible and the kidney was removed. Dr. Wolf further testified that the wound infection experienced by plaintiff in no way indicates any deviation from the appropriate standards of care by defendants Kurtzman and Jonasson. It is not uncommon in prolonged rejection, such as plaintiff's, to see local bacterial infections in the transplant wound because of the use of high corticosteriod therapy for rejection. There was no medical evidence that infection preceded the rejection. Dr. Wolf opined that rejection of the transplanted kidney was a function of the immune response by plaintiff to the transplanted organ and infection did not play any part in the rejection.

On March 16, 1987, the circuit court granted summary judgment to defendants Kurtzman and Jonasson on count III of the fifth

amended complaint. However, on plaintiff's motion, the cause was set for rehearing to allow plaintiff time to file an affidavit from Dr. Olaf Anderson. Plaintiff then obtained several extensions of time to file the affidavit from Dr. Anderson. Plaintiff never filed the affidavit, and the order of the circuit court granting summary judgment to defendants Kurtzman and Jonasson became final and appealable.

On appeal, plaintiff asserts that a genuine issue of fact exists as to whether the statements made by defendants Kurtzman and Jonasson were false and known by them to be false, and, consequently, the circuit court erred in granting summary judgment to these defendants. It is well settled that, where a plaintiff is unable to establish an element of his cause of action through the pleadings, depositions, admissions and affidavits on file, summary judgment for the defendant is proper. (*Certified Mechanical Contractors, Inc. v. Wight & Co.* (1987), 162 Ill. App. 3d 391, 399, 515 N.E.2d 1047; *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 85, 508 N.E.2d 1201.) While a plaintiff is not required to prove his case at the summary judgment stage, he is under a duty to present a factual basis which would arguably entitle him to judgment. (*Certified Mechanical Contractors, Inc.*, 162 Ill. App. 3d at 399; *Marvin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 737, 458 N.E.2d 990.) In the case at bar, we find that entry of summary judgment on count III of the fifth amended complaint was proper because defendants did not make false statements of material facts to plaintiff and plaintiff did not rely on any statements made by defendants.

The elements of a cause of action for intentional misrepresentation are: (1) a false statement of material fact; (2) made by a party who knows or believes the statement to be false; (3) with the intent to induce another to act; (4) action by the other in reliance on the statement's truth; and (5) injury to the other resulting from that reliance. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 288, 499 N.E.2d 1319; *Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 54, 508 N.E.2d 390; *Richmond v. Blair* (1985), 142 Ill. App. 3d 251, 255, 488 N.E.2d 563; *Gordon v. Dolin* (1982), 105 Ill. App. 3d 319, 324, 434 N.E.2d 341.) In addition, the reliance by the injured party upon the statement must have been justified. *Charles Hester Enterprises, Inc.*, 114 Ill. 2d at 288; *Tan*, 156 Ill. App. 3d at 54.

Plaintiff alleged in count III that defendants made the following false statements to him: (1) between October 30, 1974, and September 22, 1975, defendants advised plaintiff that it would be impossible for plaintiff to have a successful renal transplant performed

because the kidney would be rejected by his body; and (2) between October 30, 1974, and September 22, 1975, defendants advised plaintiff that the failure of the first kidney transplant was due to his body's rejection of the kidney. The first allegation is belied by plaintiff's deposition. Plaintiff testified that, following the removal of the first kidney, neither defendant Kurtzman nor Jonasson told him that he could not have a second transplant. Moreover, neither defendant told him that a second transplant would be rejected because of the failure of the first transplant. Plaintiff also testified that he was admitted to University of Illinois Hospital five times between November 1974 and September 1975. However, plaintiff could not recall any specific conversations with the defendants during those admissions regarding the failure of the first transplant or the likelihood of success of a second transplant. Lastly, plaintiff testified that defendants Kurtzman and Jonasson advised him that he could undergo a second kidney transplant, and they recommended the use of a cadaver donor for the transplant. We also consider the affidavit of defendant Jonasson in which she stated that, in September 1974, she recommended that plaintiff have a second transplant. Both defendants denied that they advised plaintiff he was not a candidate for a second transplant. In light of these affidavits and plaintiff's deposition testimony, we conclude that defendants Kurtzman and Jonasson did not represent to plaintiff, between October 30, 1974, and September 22, 1975, that a second transplant would be unsuccessful.

We next consider the allegation that defendants Kurtzman and Jonasson falsely advised plaintiff that the failure of the first transplant was caused by rejection. Plaintiff testified in his deposition that he has never been told by any doctor at Loyola that the failure of the first kidney transplant was caused by infection, rather than rejection. Plaintiff also testified that he has never been told by any doctor that the failure of the first transplant was caused by infection. Thus, plaintiff's testimony does not support the allegation in count III. Moreover, the affidavits of Dr. Wolf, defendant Kurtzman and defendant Jonasson demonstrate that the failure of the first transplant was caused by rejection. Consequently, defendants did not make a false statement to plaintiff when they advised him that the first transplant was rejected by his body.

Plaintiff asks that we consider the "affidavit" of plaintiff's mother in which she states that she was told by Dr. Anderson that the failure of the first kidney transplant was caused by infection. This "affidavit" was the subject of a motion to strike filed by defendants Kurtzman and Jonasson. On April 8, 1988, we entered an order strik-

ing the "affidavit." We refuse to reexamine the validity of the "affidavit."

We note that plaintiff was given several extensions of time in which to procure and file an affidavit from Dr. Anderson. Such an affidavit might have created an issue of fact as to whether the failure of the first transplant was caused by rejection or by infection. Plaintiff failed to obtain an affidavit from Dr. Anderson. Thus, the record is devoid of any facts to support plaintiff's allegations that the failure of the first transplant was caused by infection and that defendants falsely represented to plaintiff that the failure was caused by rejection.[2]

■ We also find no facts in the record to support plaintiff's claim that he relied upon the alleged misrepresentations. Plaintiff testified that, at the time of his discharge from University of Illinois Hospital, his general concern was to regain his health. He understood that the decision to have a second transplant was his to make. He did not decide to have a second transplant until the summer of 1976 when doctors at Loyola suggested the use of his grandmother's kidney. He had not considered having a second transplant prior to that time because he was trying to regain his health and he wanted to stabilize his medical condition. Once the suggestion was made by the doctors at Loyola that plaintiff have the second transplant, he acted promptly to initiate the process. Thus, plaintiff's testimony does not support his claim that he relied on defendants' alleged misrepresentations. In the absence of any reliance, plaintiff could not maintain his cause of action for intentional misrepresentation, and the circuit court properly granted summary judgment to defendants Kurtzman and Jonasson.

■ Even if we assume that plaintiff relied upon certain misrepresentations made by defendants Kurtzman and Jonasson, he cannot recover damages under count III of the fifth amended complaint. The prayer for relief in count III is limited to punitive damages and costs of suit. The rule in Illinois is that punitive damages may not be awarded in the absence of compensatory damages. (*McGrew v. Heinold Commodities, Inc.* (1986), 147 Ill. App. 3d 104, 110, 497 N.E.2d 424; *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 92, 484 N.E.2d 349, *aff'd* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319; *Rhodes v. Uniroyal, Inc.* (1981), 101 Ill.

---

[2]Plaintiff's deposition testimony that he was told by his mother that Dr. Anderson said the failure of the first transplant was caused by infection, rather than rejection, is hearsay and does not provide factual basis for the allegation that defendants made material misrepresentations to plaintiff. See *Klobucar v. Stancik* (1985), 138 Ill. App. 3d 342, 485 N.E.2d 1334.

App. 3d 328, 331, 427 N.E.2d 1380; *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 310, 393 N.E.2d 1223.) Plaintiff's failure to seek compensation for actual damages is fatal to count III of the fifth amended complaint. *Charles Hester Enterprises, Inc.,* 137 Ill. App. 3d at 92; *Ecker v. Big Wheels, Inc.* (1985), 136 Ill. App. 3d 651, 655, 483 N.E.2d 639.

For the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI and FREEMAN, JJ., concur.