## In re SCATTERED CORPORATION SECURITIES LITIGATION.

### Nos. 93 C 4069, 93 C 5346 and 93 C 5447.

United States District Court,
N.D. Illinois, E.D.

Jan. 20, 1994.

Docketed Jan. 21, 1994.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

### FACTS

Defendant, Scattered Corporation ("Scattered"), is an Illinois corporation engaged in the business of buying and selling securities. During a period between February 26, 1993 and June 29, 1993, Scattered sold approximately 170 million shares of LTV Corporation stock ("old LTV shares" or "old LTV stock"). LTV was one of the nation's largest steel producers, and was embroiled in a long and complicated bankruptcy proceeding. On February 26, 1993, LTV announced a reorganization plan, which would allow the company to emerge from bankruptcy. Under the plan, current shareholders would be given warrants granting the holder a right to receive "New LTV" stock ("new LTV stock") when, and if, issued. The new LTV stock would replace the old LTV stock, which would cease to exist. Holders of old LTV shares would receive approximately 1.08 warrants for each 100 shares of old LTV stock. This plan was approved by the bankruptcy court on May 27, 1993, and became effective on June 28, 1993. Sale of old LTV stock was halted on June 29, 1993.

Plaintiffs are persons and entities who bought LTV stock from Scattered between February 26, 1993 and June 29, 1993. During this period, plaintiffs allege Scattered sold approximately 170 million shares of LTV stock short. That is, Scattered sold Old LTV shares that it did not own or intend to borrow. Plaintiffs claim that Scattered sold enough stock short to create a false market, driving the price of LTV shares down. They allege that Scattered never intended to deliver the "old LTV" shares they sold. Rather, according to plaintiffs, Scattered intended to cover its sales in one of two ways. First, Scattered could delay issuing the shares until it received "new LTV" shares, which were worth a fraction of the price of "old LTV" shares. Alternatively, Scattered intended never to deliver anything, expecting the shares to be cancelled without further costs to clear.

Plaintiffs' complaint contains four theories of wrongdoing by Scattered. First, plaintiffs' state that Scattered's actions violated section 10(b) and Rule 10(b)(5) of the Securities Act of 1934. Second, Scattered allegedly sold unregistered stock, in violation of section 12($l$) of the Securities Act of 1933 ("1933 Act"). Third, plaintiffs maintain that Scattered violated section 1964 of the Racketeer Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. (1993). Fourth, Scattered has allegedly been unjustly enriched by its criminal conduct.

Plaintiffs also seek to impose a constructive trust on defendants', CSX (f/k/a the Midwest Stock Exchange) and MCC, a wholly owned subsidiary of CSX. Plaintiffs claim that these parties currently possess around $5 million of Scattered's profits from the allegedly illegal trading.

Before the court are the following motions: (1) plaintiffs' motion for class certification, (2) Scattered's motion to dismiss, (3) defendants' CSX and MCC's motion to dismiss, (4) defendant motion to strike, (5) plaintiffs' interpleader motion, (6) Scattered's motion to dismiss the interpleader, and (7) plaintiffs' motion for a constructive trust.

The court grants plaintiffs' motion for class certification, reserving the right to create sub-classes in the future if necessary. It also grants defendants' motion to dismiss and gives plaintiffs 7 days to re-plead. In addition, the court finds that the other motions before the court are moot. The court offers the following rationale in support of its decision to grant Scattered's motion to dismiss.

## DISCUSSION

### I. Standard of Review for Motion to Dismiss

■ For the purpose of deciding defendant's motion to dismiss, the court assumes the truth of all well-pled factual allegations in the complaint and draws all possible inferences therefrom in favor of plaintiff. *Webster v. New Lenox School Dist. No. 122*, 917 F.2d 1004, 1005 (7th Cir.1990). Dismissal is not warranted unless it appears beyond doubt that plaintiff could prove no set of facts that would entitle him to relief. *Caldwell v. City of Elwood*, 959 F.2d 670 (7th Cir.1992).

### II. Rule 10(b)(5)

### A. Misleading Statements

■ In order to state a claim under Rule 10b–5, 17 C.F.R. § 240.10b–5,[1] the plaintiff must demonstrate that Scattered: (1) made an untrue statement of material fact or omitted a material fact that rendered the statements made misleading, (2) in connection with a securities transaction, (3) with the intent to mislead, and (4) which caused plaintiff's loss. *Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir.1989). The court in *Schlifke* also stated that the express language of Rule 10b–5 proscribes omissions that render affirmative statements misleading; thus, incomplete disclosures, or "half-truths," implicate a duty to disclose whatever additional information is necessary to rectify the misleading statements. *Id.* at 944. Even absent any misleading statements, an independent duty to disclose material facts may be triggered by a fiduciary relationship. *Id.*

■ In the present case, plaintiffs' well-pled allegations lead the court to the conclusion that it could not recover under Rule 10b–5. First, Scattered's inclusion of the words "short exempt" on their trade tickets did not violate Rule 10b–5. Under Rule 10b–5, to be actionable, a statement must, in fact, be misleading. *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988). Also, there must be a link between the alleged misrepresentation

---

1. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b–5.

and either the price received (or paid) by the plaintiff. *Id.* at 248–49, 108 S.Ct. at 992.

Plaintiffs have failed to plead facts that would indicate that the statement was, in fact, misleading. Their complaint is devoid of facts that would indicate that the words "short exempt" played any role in their decision to purchase old LTV stock. Additionally, plaintiffs' complaint does not establish the essential link between the alleged misrepresentation and the price they paid for the old LTV stock. Since "short exempt" did not mislead plaintiffs, Scattered had no duty to disclose additional information concerning its trading activities. Nothing in the consolidated complaint would support a conclusion that the words "short exempt" affected the market for old LTV shares during the class period. Thus, the words could not have affected the price plaintiffs paid for the old LTV shares.

Furthermore, plaintiffs have failed to state facts that would establish the existence of a fiduciary relationship between plaintiffs and Scattered. Scattered, therefore, had no independent duty to disclose material facts to plaintiffs under Rule 10b–5.

### B. Market Manipulation

Section 10(b) proscribes the use of "any manipulative or deceptive device or contrivance in contravention of the rules and regulations [of the SEC] employed in the purchase or sale of designated securities." Rule 10b–5, promulgated under this provision, details certain prohibited deceptive practices.

For Rule 10b–5 purposes, " 'manipulation' ... refers generally to practices ... that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). Injection of accurate information into the market price does constitute market manipulation. *In re Olympia Brewing Co. Securities Litigation*, 613 F.Supp. 1286, 1292 (N.D.Ill.1985). According to the court in *In re Olympia*, short selling "is simply not unlawful, even in large numbers and even if the trading does negatively affect the price." *Id.* Also, "[w]here the trading volume and price

simply reflect supply and demand based on accurate market information, this is lawful market behavior, not market manipulation." *Id.*

Sometime in February of 1993, the United States Bankruptcy Court for the Southern District of New York issued "The LTV Second Modified Joint Plan of Reorganization and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code." The Plan and Disclosure Statement provided: "The estimated value of the consideration to be received by the holders of the Old LTV common stock would be approximately 3.22 cents." With this information, an efficient market would have driven the price of old LTV stock down during the period leading up to June 29, 1993, the date on which old LTV shares stopped trading.

Plaintiffs in the present case recognize that Scattered's short selling of stock, alone, was not unlawful. Plaintiffs also agree that the effect of Scattered's trading on the market was perfectly consistent with efficient market activity. That is, plaintiffs maintain that Scattered's short sales injected accurate information into the market, which drove the price of old LTV stock down. Thus, in light of plaintiffs factual allegations, and the reasonable implications therefrom, the court finds that plaintiffs would not be entitled to relief based on a theory that Scattered's activity artificially affected the market.

### III. Sale of Unregistered Stock

Plaintiffs maintain that Scattered sold around 50 million more shares of old LTV than existed. In addition, plaintiffs claim that Scattered, according to its scheme, distributed LTV warrants in place of the old LTV shares it sold. Both of these acts, plaintiffs allege, constitute the sale of unregistered stock in violation of section 12(1) of the 1933 Act. 15 U.S.C. § 77*l* (1) (1993). Plaintiffs further allege they are entitled to recover the consideration paid for the security with interest or damages under 15 U.S.C. § 77*l* (2).

According to the 1933 Act, 15 U.S.C. § 77e:

Unless a registration statement is in effect as to a security, it shall be unlawful for any

person, directly or indirectly—(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

However, section 77d of the 1933 Act states: "The provisions of § 77e of this title shall not apply to ... transactions by any person other than an issuer, underwriter, or dealer." 15 U.S.C. § 77d(1) (1993).

With regard to the old LTV shares sold by defendants, the court finds that plaintiffs have proven no set of facts that would entitle them to relief. Specifically, plaintiffs have failed to provide the court with facts that would establish that Scattered was an "underwriter" of the old LTV shares. Therefore, pursuant to 15 U.S.C. § 77d, Scattered was not bound by the registration requirements of section 77e. Further, in light of the court's finding, the primary authority plaintiff's cite in support of their theory is distinguishable from the present circumstances. The defendant in *S.E.C. v. Graystone Nash, Inc.*, 820 F.Supp. 863 (D.N.J.1993), was an underwriter of the stock in question and, therefore, subject to the registration requirements in section 77e.

The court also finds that plaintiffs cannot prove facts which would entitle them to relief based on their claim that Scattered's sale of LTV warrants violated section 77e. The facts alleged by plaintiffs in their consolidated complaint maintain that, "Scattered defendants offered to and sold all 122 million ... shares of *old LTV* common stock...." Plaintiffs' Consolidated Complaint, ¶ 70; *see also* Plaintiffs Response to Defendant's Motion to Dismiss, at p. 23 ("Scattered did not sell LTV warrants"). Plaintiffs allege, and Scattered agrees, that it sold *old LTV* shares, not LTV warrants. While the court notes that Scattered would have been in an extremely precarious situation if the LTV warrants were never issued, it cannot find that it sold unregistered LTV warrants when

plaintiffs admit that Scattered sold old LTV shares. Furthermore, plaintiffs do not refute the fact that the LTV warrants, when issued on June 28, 1993, were exempt from registration under section 1145 of the Bankruptcy Code.

## IV. RICO Claims

In Count IV of their consolidated complaint, plaintiffs claim that Scattered's short-selling scheme constitutes securities fraud and is a "racketeering activity" under 18 U.S.C. § 1961(1) (1993). Scattered's activity, according to plaintiffs, violated 18 U.S.C. § 1962(c), which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

However, the court has found that plaintiffs can prove no set of facts that would establish that Scattered's short-selling activity violated federal securities laws. Scattered's activities, therefore, do not constitute "racketeering activity" under 18 U.S.C. §§ 1961(1) or 1962(c). Plaintiffs have alleged no additional facts that would entitle them to relief under RICO.

## V. Unjust Enrichment

To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *HPI Health Care v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 26, 545 N.E.2d 672, 679 (1989).

After a review of the well-plead factual allegations in the complaint, and drawing all possible inferences therefrom in favor of plaintiffs, the court finds that plaintiffs have not stated a claim that would entitle them to recover for unjust enrichment. More specifically, Scattered's retention of benefits would not violate the principles of justice, equity or good conscience. The well-plead facts indicate that Scattered took advantage of the

information it possessed—information that was available to the public. Scattered took the risk that the LTV warrants would, in fact, be issued in the future. It exploited an inefficient market which did not accurately reflect the value of old LTV stock. Further, plaintiffs fail to state facts that would indicate that they would not have lost money if Scattered had issued the old LTV shares. In fact, plaintiffs do not even allege that they demanded their old LTV shares from Scattered during the class period.

## VI. Constructive Trust

■■■■ In order to impose a constructive trust under Illinois law, a court must find, "some form of wrongful or unconscionable conduct." *Chas. Hester Ent. v. Ill. Founders Ins. Co.,* 114 Ill.2d 278, 293, 102 Ill.Dec. 306, 499 N.E.2d 1319 (1986). In the present case, the court finds that plaintiffs can prove no set of facts which would establish that Scattered engaged in wrongful or unconscionable conduct. Instead, the facts asserted by plaintiffs indicate that Scattered took advantage of the information it possessed and exploited the market's inability to accurately reflect the price of old LTV stock. As a result of the court's finding, plaintiffs are not entitled to impose a constructive trust on Scattered's funds, which are held by defendants CSX and MCC.

## VII. Conclusion

The court grants Scattered's motion to dismiss and gives plaintiffs 7 days to amend its complaint. The court points out that it is unclear from the facts pled when and how Scattered produced LTV warrants to cover the 170 million shares of old LTV stock it sold. Also, plaintiffs failed to provide sufficient facts to establish that Scattered unjustly benefitted to the detriment of plaintiffs in this case. Plaintiffs maintain that Scattered intended to produce something in return for the old LTV shares it sold: either old LTV shares or LTV warrants. In either scenario, Scattered's buying activity would have raised the price of the old LTV stock or warrants. The court is simply unpersuaded that plaintiffs have stated a claim absent evidence that

plaintiffs requested, were denied, and would have sold their old LTV shares.

IT IS SO ORDERED.